## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

_____

JON HANSON, Individually and On Behalf of          Court File No. 1:13-cv-00067-LRR
All Others Similarly Situated,

                Plaintiff,

v.

BERTHEL FISHER & COMPANY
FINANCIAL SERVICES, INC., and
THOMAS JOSEPH BERTHEL,

                Defendants.

_____

_____

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT
_____

# TABLE OF CONTENTS

Page

INTRODUCTION AND RELIEF REQUESTED ......................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 1

THE MATERIAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ...................... 2

A.  The Parties ............................................................................................ 2

B.  Summary Of Material Allegations Against TNP ................................................. 3

C.  Summary Of Material Allegations Against BFC ................................................. 4

D.  Summary Of Material Allegations Against Berthel ............................................ 5

E.  The Key Terms Of The Documents Embraced By The First Amended Complaint ........... 6

F.  Legal Claims Asserted In The First Amended Complaint .................................... 8

ARGUMENT .................................................................................................. 8

I.  LEGAL STANDARDS APPLICABLE TO BFC'S MOTION TO DISMISS ................... 8

    A.  Standard Under Fed. R. Civ. P. 12(b)(6) ................................................ 8

    B.  Allegations Sounding In Fraud Must Be Stated With Particularity ...................... 9

    C.  The Court May Consider Documents Embraced By The First Amended
        Complaint ............................................................................. 9

II.  HANSON'S SECURITIES FRAUD, FRAUD IN THE INDUCEMENT, AND
    NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW
    BECAUSE BFC WAS NOT THE MAKER OF ANY MISREPRESENTATIONS .......... 10

III.  HANSON'S SECURITIES FRAUD, FRAUD IN THE INDUCEMENT, AND
    NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF
    LAW BECAUSE BFC DID NOT HAVE A DUTY TO DISCLOSE
    INFORMATION TO HANSON ........................................................... 12

IV.  HANSON'S NEGLIGENCE-BASED CLAIMS SHOULD BE DISMISSED
    BECAUSE DEFENDANTS OWE NO LEGAL DUTY TO HANSON .................... 14

V.  HANSON'S FRAUD-BASED CLAIMS ARE BARRED BY THE BESPEAKS
    CAUTION DOCTRINE AND BECAUSE PLAINTIFF DID NOT RELY ON
    DEFENDANTS IN DECIDING WHETHER TO INVEST .............................. 15

i

VI.   HANSON'S CLAIMS UNDER CAL. CORP. CODE §§ 25401, 25501, AND
      25504 FAIL AS A MATTER OF LAW BECAUSE HANSON DID NOT
      PURCHASE SECURITIES FROM BFC ........................................................................ 16

VII.  HANSON'S CLAIMS AGAINST BERTHEL SHOULD BE DISMISSED ...................... 18

VIII. HANSON'S AIDING AND ABETTING CLAIMS FAIL AS A MATTER OF
      LAW .............................................................................................................................. 19

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009) ....................................................................................... 9, 20

<u>Bell Atlantic Corp. v. Twombly</u>,
    550 U.S. 544 (2007) ......................................................................................... 8, 9

<u>Berglund v. Cynosure, Inc.</u>,
    502 F. Supp. 2d 949 (D. Minn. 2007) .................................................................. 18

<u>Brown v. J.P. Turner & Co.</u>,
    No. 1:09-CV-2649-JEC, 2011 WL 1882522 (N.D. Ga. May 17, 2011) ...................... 14, 15

<u>Burgess v. Premier Corp.</u>,
    727 F.2d 826 (9th Cir. 1984) ............................................................................. 18

<u>Century Sur. Co. v. Crosby Ins., Inc.</u>,
    124 Cal. App. 4th 116 (2004) ............................................................................. 16

<u>Chiarella v. U. S.</u>,
    445 U.S. 222 (1980) ......................................................................................... 12

<u>Draper v. Wellmark, Inc.</u>,
    478 F. Supp. 2d 1101 (N.D. Iowa 2007) .............................................................. 11

<u>E-Shops Corp. v. U.S. Bank Nat. Ass'n</u>,
    678 F.3d 659 (8th Cir. 2012) .............................................................................. 9

<u>E.F. Hutton Mort. Corp. v. Equitable Bank, N.A.</u>,
    678 F. Supp. 567 (D. Md. 1988) ......................................................................... 11

<u>Fiol v. Doellstedt</u>,
    50 Cal. App. 4th 1318, 1325-26 (1996) ................................................................ 19

<u>Fry v. Mount</u>,
    554 N.W.2d 263 (Iowa 1996) ............................................................................. 16

<u>Gil v. Bank of Am., N.A.</u>,
    138 Cal. App. 4th 1371 (2006) ........................................................................... 16

<u>Goodman v. Kennedy</u>,
    18 Cal. 3d 335 (1976) ....................................................................................... 14

Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.,
    No. 04-1234, 2006 WL 6935318 ................................................................. 19

In re Diasonics Sec. Lit.,
    599 F. Supp. 447 (N.D. Cal. 1984) ............................................................. 17

In re Enron Corp. Sec. Lit.,
    761 F. Supp. 2d 504 (S.D. Tex. 2011) ........................................................ 13

In re Hutchinson Tech., Inc. Sec. Litig.,
    536 F.3d 952 (8th Cir. 2008) ...................................................................... 18

In re Lehman Bros. Sec. & Erisa Litig.,
    681 F. Supp. 2d 495 (S.D.N.Y. 2010) aff'd sub nom In re Lehman
    Bros. Mortgage-Backed Sec. Litig., 650 F.3d 167 (2d Cir. 2011) ................ 13

Jackson v. Fischer,
    No. C 11-2753, 2013 WL 1089860 (N.D. Cal. Mar. 15, 2013) ...................... 18

Janus Capital Group, Inc. v. First Derivative Traders,
    131 S. Ct. 2296 (2011) ....................................................................... 10, 11

Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n,
    827 F. Supp. 2d 893 (S.D. Iowa 2011) aff'd, 666 F.3d 1099 (8th Cir. 2012) .................... 14

Lillard v. Stockton,
    267 F. Supp. 2d 1081 (N.D. Okla. 2003) ................................................... 18

Lincoln Sav. Bank v. Open Solutions, Inc.,
    No. C12-2070, 2013 WL 3456951 (N.D. Iowa July 9, 2013) ........................... 9

Martino-Catt v. E.I. duPont de Nemours & Co.,
    213 F.R.D. 308 (S.D. Iowa 2003) ............................................................... 10

Masters v. San Bernardino Cnty. Employees Ret. Assn.,
    32 Cal. App. 4th 30 (1995) ........................................................................ 11

McAdams v. McCord,
    584 F.3d 1111 (8th Cir. 2009) ...................................................................... 9

McGonigle v. Combs,
    968 F.2d 810 (9th Cir. 1992) ..................................................................... 15

Morton v. Becker,
    793 F.2d 185 (8th Cir. 1986) ....................................................................... 8

Ohlendorf v. Wells Fargo Bank N.A.,
    No. C09-4028-PAZ, 2009 WL 2475294 (N.D. Iowa Aug. 11, 2009) ............... 9

Parnes v. Gateway 2000, Inc.,
    122 F.3d 539 (8th Cir. 1997) ...................................................................... 9, 15

Sarbaz v. Wachovia Bank,
    No. 10-03462 CRB, 2010 WL 4692047 (N.D. Cal. Nov. 10, 2010) ................................ 13

S.E.C. v. Seaboard Corp.,
    677 F.2d 1289 (9th Cir. 1982) ...................................................................... 17

Sinnard v. Roach,
    414 N.W.2d 100 (Iowa 1987) ......................................................................... 13

Sitrick v. Citigroup Global Mkts., Inc.,
    No. 05-3731, 2009 WL 1298148 (C.D. Cal. Apr. 30, 2009) ............................................ 16

Smith v. Questar Capital Corp.,
    No. 12-2669, 2013 WL 3990319 (D. Minn. Aug. 2, 2013) ......................................... 14, 15

Thomas v. Hickman,
    No. F06-0215A, 2006 WL 2868967 (E.D. Cal. Oct. 6, 2006) .......................................... 11

Varga v. U.S. Bank Nat. Ass'n,
    No. 12-3180, 2013 WL 3338750 (D. Minn. July 2, 2013) ............................................. 19

Viterbi v. Wasserman,
    191 Cal. App. 4th 927 (2011) ....................................................................... 10

Weimer v. Int'l Flavors & Fragrance,
    240 F.R.D. 431 (N.D. Iowa 2007) ..................................................................... 9

Williams v. Wraxall,
    33 Cal. App. 4th 120 (1995) ........................................................................ 12

Xay Fong v. All Lots, L.L.C.,
    707 N.W.2d 337 (Iowa Ct. App. 2005) ................................................................ 12

OTHER AUTHORITIES

Iowa Uniform Securities Act § 502.501 ................................................... 8, 10, 12, 13, 16

Fed. R. Civ. P. 9(b) ................................................................. 9, 13, 19, 20
Fed. R. Civ. P. 12(b)(6) ..................................................................... 8

Cal. Corp. Code § 25400 .................................................... 8, 10, 12, 14, 16
Cal. Corp. Code § 25401 ................................................ 8, 10, 12, 14, 16, 17
Cal. Corp. Code § 25501 ..................................................................... 16, 17
Cal. Corp. Code § 25504 .................................................................. 16, 17, 18

## INTRODUCTION AND RELIEF REQUESTED

Plaintiff Jon Hanson ("Hanson") claims to represent a class of individuals who purchased promissory notes from a real estate investment entity known as the TNP Participating Notes Program, LLC (the "Program"). Thompson National Properties, LLC ("TNP"), a national real estate syndicator, created the Program in 2008. Hanson alleges to have invested in the Program pursuant to a Private Placement Memorandum dated December 9, 2008 (the "PPM"). Hanson alleges that the Program was a Ponzi-like scheme in which TNP "comingled funds it raised through the [Program] and used investor money to make distribution payments to investors in other programs [TNP] sponsored." According to Hanson, the PPM misrepresented the Program's use of investor proceeds raised from the offering, as well as TNP's financial condition.

Hanson does not accuse Defendants Berthel Fisher & Company Financial Services, Inc. ("BFC") and Thomas J. Berthel ("Berthel") (hereafter collectively the "Defendants") of operating a "Ponzi-like" scheme. Hanson does not accuse BFC of misrepresenting its own finances. Hanson sued the Defendants because the Program allegedly distributed a fraudulent PPM. The First Amended Complaint (the "FAC") is premised on the fallacy that BFC had a legal "duty to conduct an independent, thorough, and reasonable investigation" of the Program. Hanson has not and cannot plead any facts sufficient to support such a sweeping conclusion. Ultimately TNP and the Program failed to meet their obligations, and Hanson wants to make Defendants the guarantors of his financial losses. The law does not support Hanson's claims and the FAC should be dismissed in its entirety, with prejudice.

## SUMMARY OF ARGUMENT

The FAC should be dismissed for four primary reasons. First, Defendants did not make any misrepresentations to Hanson. All of the misrepresentations alleged in the FAC are contained in the PPM. The PPM was authored and issued by TNP and the Program, not the Defendants. As

a matter of law, none of those representations contained in the PPM are attributable to the Defendants, and the Defendants cannot be held legally accountable for them.

Second, Defendants owed no duties to Hanson. BFC was not the issuer of the notes. Hanson was not and is not BFC's customer. Defendants had no duty and undertook no duty to identify or rectify the issuer's alleged omissions of material fact or to perform due diligence on Hanson's behalf. In fact, Hanson (and every other investor in the Program) expressly represented and agreed that he relied <u>solely</u> on his "own examination of the [Program] and the terms of the offering, including the merits and risks involved."

Third, there are no grounds for asserting "control person" liability against Berthel. The primary violations of the securities laws were committed, if at all, by TNP and the Program. Berthel is not a controlling person of TNP or the Program, and there is no such thing as "control person" liability for common law claims.

Fourth, Hanson's aiding and abetting theories fail because the FAC does not include allegations sufficient for this Court to conclude that Defendants had actual knowledge of TNP's and/or the Program's alleged fraud.

### <u>THE MATERIAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT</u>[1]

**A.     The Parties**

Plaintiff Jon Hanson ("Hanson") is a resident of Colorado. (FAC, filed November 4, 2013 ¶ 16.) Hanson invested $75,000 in the Program. (FAC ¶ 100.) Hanson does not state the date upon which <u>his</u> alleged investment was made, but the FAC defines the class to include persons who purchased notes from the Program between December 2008 and March 2010. (<u>Id.</u> ¶ 108.)

---

[1] For the purposes of this motion, all allegations of the FAC are to be treated as true. However, it should be noted that Defendants strongly disagree with the "facts" as pleaded in the FAC.

The FAC does not specifically allege that Hanson or any member of the class ever communicated with either Defendant at any time.

BFC is a securities broker-dealer and FINRA member firm with a principal place of business located in Marion, Iowa. (FAC ¶¶ 17, 18.) Berthel is the Chief Executive Officer of BFC. (Id. ¶ 22.)

**B.      Summary Of Material Allegations Against TNP**

The FAC is premised on a fraud allegedly perpetrated by TNP and the Program. TNP was formed in 2008. (FAC ¶ 26.) One of TNP's securities offerings was the Program, which was to invest in real estate and real estate-related debt. (Id. ¶¶ 38, 39, 49.) The Program was a private placement offering of up to $25 million in promissory notes issued by the Program under the terms set forth in the PPM. (Id. ¶¶ 38, 49.) The Program promised a 10%-13% return to investors. (Id. ¶ 51.) The notes were supported by TNP's contractual guaranty. (FAC ¶ 38.)

TNP (not BFC) was the Program's manager. TNP operated and managed the Program, and oversaw the Program's accounting and finances. (FAC ¶ 50.) "The success of the [Program] depended upon…management by TNP and upon the skill and expertise of TNP." (Id. ¶ 69.) The "PPM cautioned investors to only invest in the Program if they were 'willing to entrust all such aspects of management to TNP.'" (FAC ¶ 71 (emphasis added).)

Through offering memoranda issued in 2008, 2009, and 2010, TNP and its affiliates made several other offerings of securities, many of which were promissory note offerings similar to the Program (the "Unrelated Offerings"). (FAC ¶¶ 32-34, 36, 41-43.) The Unrelated Offerings were also managed by TNP (not BFC). (Id. ¶ 45.)

Hanson alleges that the PPM misrepresented two things: (1) the Program's anticipated use of proceeds from the offering, and (2) the financial condition of the guarantor of the offering,

TNP.  Specifically, Hanson alleges that the PPM[2] failed to disclose that TNP comingled funds from the various TNP offerings, and "used [new] investor money to pay distributions to [prior] investors in other TNP programs in Ponzi-like fashion."  (FAC ¶¶ 46, 60, 61, 66-68.)  Hanson also alleges that the PPM "substantially misrepresented" TNP's financial condition.  (Id. ¶ 57.) TNP and "certain of its affiliated entities" experienced "severe" financial difficulties for the time period April 2008 through 2010.  (Id. ¶ 56; see also ¶¶ 52-55, 57.)  TNP's deteriorating financial condition threatened TNP's ability to manage the Program and rendered TNP's guaranty on the notes "worthless."  (FAC ¶¶ 62b, 62c.)  Hanson does not allege that the PPM misrepresented the financial condition of the Program.

**C.      Summary Of Material Allegations Against BFC**

All of the allegations described above relate only to the conduct of TNP and the Program, not the Defendants.  The allegations against BFC fall into three categories.

The first category relates to BFC's alleged role in the offering.  Hanson alleges that BFC "was the underwriter, promoter, and Managing Broker-Dealer" of the Program.  (FAC ¶ 1.)  The FAC contains no specific allegations concerning BFC's alleged role as the "underwriter" of the Program.  Hanson does not allege that BFC purchased securities from the Program and resold the securities to investors (the customary role of an underwriter).  Similarly, Hanson alleges that "[BFC] oversaw the securities offering," and "participated in the preparation of the PPM." (Id. ¶¶ 40, 64.)  But the FAC contains no specific allegations describing BFC's "oversight" role or actions taken in "preparing" the PPM.  Hanson also alleges that, BFC "directly and through its agents, approached [the Program] investors, including the Plaintiff, distributed the PPM to them, and offered and sold them securities issued by [the Program]."  (FAC ¶¶ 92, 122.)  Again, the

---

[2] The only alleged misrepresentations and/or omissions relied upon by Hanson and the putative class were contained in the PPM.  (FAC ¶ 97.)  There were no other misrepresentations or omissions made outside of the PPM.  Id.

FAC provides no details concerning BFC's alleged role in approaching investors, distributing the PPM, or selling securities.

The second category relates to BFC's alleged knowledge of the misrepresentations contained in the PPM. Hanson does <u>not</u> allege that BFC knew that TNP and/or the Program had "comingled" funds. The FAC says only that BFC had "the opportunity to learn the truth" about TNP's alleged "comingling." (FAC ¶ 63.) Hanson alleges that BFC was aware of TNP's "deteriorating" financial condition, but does <u>not</u> point to any specific piece of information that BFC allegedly knew. Hanson cites to several sets of TNP's financial statements from the 2009 time period, but fails to specifically identify which (if any) financial statements were in BFC's possession or to identify what (if anything) is untrue about the PPM. (<u>Id.</u> ¶ 55.) In short, Hanson alleges <u>opportunity to learn facts</u> in lieu of <u>facts</u>, and implies knowledge from BFC's "close relationship" with TNP. (<u>Id.</u> ¶ 59.)

The third category relates to BFC's failure to conduct adequate due diligence for the offering. Hanson alleges that BFC became aware of serious "red flags" surrounding TNP and the Program, and that BFC failed to adequately investigate such red flags. (FAC ¶¶ 85, 87.) Hanson alleges that BFC's ability to conduct "adequate" due diligence was "impaired" by the promise of commissions and profits, and by an indemnity agreement between BFC and TNP. (<u>Id.</u> ¶¶ 88-90.) These allegations merely assume that BFC had a "duty to conduct an independent, thorough, and reasonable investigation" of TNP and the Program. (<u>Id.</u> ¶ 7.) Other than attaching labels such as "Managing Broker-Dealer" or "underwriter," Hanson alleges no specific facts giving rise to this alleged duty to Hanson.

**D.      Summary Of Material Allegations Against Berthel**

The FAC alleges that, owing to his position as "executive officer, principal, and co-owner" of BFC, "Berthel was able to and did control [BFC's] activities, including [BFC's]

preparation and dissemination of misleading offering documents for…[the Program], and [BFC's] management and oversight of the TNP 2008 Offering." (FAC ¶ 23.) The FAC does not specifically describe what Berthel knew, when he knew it, or his specific role in "preparing" the PPM. Thus, Hanson merely assumes that Berthel "directed and controlled" BFC's "preparation" of the PPM, and that Berthel knew the offering documents were misleading. (<u>Id.</u> ¶¶ 11, 82.)

**E.** **The Key Terms Of The Documents Embraced By The First Amended Complaint**

The FAC refers to, and quotes selectively from, the PPM. The notes were a private placement that could be sold only to "accredited investors." (The PPM is attached to the Affidavit of Leslie D. Smith, submitted herewith ("Smith Aff.") as Ex. 1, p. 1.) An investment in the notes was "speculative" and involved "significant risk," in part because the Program was a brand new company with no capital or assets beyond the net proceeds raised from the offering and any resulting investments. (<u>Id.</u> p. 11.) The Program thus provided "no assurance that the cash flow, profits or capital of the [Program] will be sufficient to pay all interest and repay principal on the Notes in a timely manner or at all or that the [Program] will be profitable." (<u>Id.</u>) The PPM specifically discussed the risks relating to "forward looking statements" contained in the offering materials. (<u>Id.</u> p. 10.)

The PPM disclosed risks concerning the guarantor, TNP. The PPM disclosed that TNP may be unable to fulfill the guaranty; that the net worth of TNP may be insufficient to support the guaranty; and that there are "no restrictions placed on TNP…with respect to its net worth, its operations or otherwise." (PPM p. 11.) The PPM disclosed TNP's contingent liabilities, as well as the likelihood that TNP would incur additional obligations during the period of the offering:

> In particular, TNP has agreed to guarantee up to $50 million of 12% per annum notes issued by an affiliate of TNP. If TNP is required to perform on this guaranty <u>or future guarantees on other debt obligations or otherwise experiences an adverse financial event</u>, it is possible that TNP may not have sufficient funds to or resources to manage TNP or perform under its guaranty of the Notes.

(<u>Id.</u> (emphasis added).)

The PPM disclosed that TNP's financial statements were <u>not</u> verified by an independent third party (only "unaudited" financial statements were included with the PPM). (PPM pp. 11, B-1.) The PPM does <u>not</u> state that <u>any</u> independent third party, including BFC, had performed any due diligence respecting the Program or TNP, the scope of due diligence, or that investors could rely on BFC's due diligence.

The PPM described risks concerning the use of proceeds from the offering. Neither TNP nor the Program was "obligated to refrain from engaging in activities or transactions that involve a conflict of interest, which favor the interests of [TNP] over the interests of the Noteholders or which are otherwise adverse to the Noteholders." (PPM p. 13.) The operating agreement governing the Program, which is attached to the PPM, stated that the Program had the power to "fund loans to or equity investments in [TNP] or its Affiliates, on such terms and conditions as [TNP] determines, in its sole discretion, to be desirable." (PPM p. H-3 at ¶ 2.02c.)

The Program (not BFC) was the "issuer" of the notes. (PPM pp. 4 (subscriptions were sent directly to TNP, which had complete discretion to reject any subscription); A-2 ("This is the offer and agreement…to purchase Notes to be issued by the [Program]…"); A-6 (the role of the Broker-Dealer is to "recommend[] a purchase of the Notes…").) TNP (not BFC) had "full, exclusive, and complete discretion to manage and control the business and affairs of the [Program]…" (<u>Id.</u> H-5 ¶ 4.10.) TNP (not BFC) was the "<u>sole person</u> or entity with the power to bind the [Program]…" <u>Id.</u> (emphasis added). This included the exclusive power to "engage in the Offering and sell, execute, and issue the Notes." (PPM at H-3 ¶ 2.02b.)

The PPM identifies BFC as the "Managing Broker-Dealer" of the offering. (PPM p. ii.) The PPM does <u>not</u> advise investors that BFC would perform due diligence on their behalf. To the contrary, investors were <u>not</u> to rely on BFC in any way: "In making an investment decision, investors must rely on their own examination of the [Program] and the terms of the Offering,

including the merits and risks involved." (Id.)  The PPM invited investors to ask questions and obtain information about the investment from TNP and the Program.  (Id. pp. 2, 33, A-1, A-7 ¶ 6.) "[N]o person" other than TNP or the Program "has been authorized by the [Program] to make any representations or furnish any information with respect to the [Program] or the Notes…"  (PPM p. 2 (emphasis added); see also A-7 ¶ 2 ("I am basing my decision to invest...on the [PPM] and I have relied only on the information contained [therein] and have not relied upon any representations made by any other person or any prior information.").

**F.    Legal Claims Asserted In The First Amended Complaint**

Hanson alleges eleven legal counts against the Defendants.  Four claims are pleaded as securities fraud under the California and Iowa state securities statutes.  (See Count One (Cal. Corp. Code § 25401); Count Two (Cal. Corp. Code § 25400); Count Seven (Iowa Uniform Securities Act (the "Act") § 502.501); Count Eight (the Act § 502.501A).)   The remaining claims allege Fraud in the Inducement of Contract (Count Three – California law only); Negligent Misrepresentation (Counts Four and Nine); Negligence (Counts Five and Ten); and Aiding and Abetting Fraud (Counts Six and Eleven) under California and Iowa law.

**ARGUMENT**

**I.    LEGAL STANDARDS APPLICABLE TO BFC'S MOTION TO DISMISS**

**A.    Standard Under Fed. R. Civ. P. 12(b)(6)**

Courts grant motions to dismiss where it is clear that no relief could be granted under any set of facts consistent with the allegations of the complaint.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986).  In deciding a motion to dismiss under Rule 12(b)(6), a district court should assume all facts in the complaint to be true.  Id.  However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plaintiffs must allege facts with enough specificity "to raise a right to

relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient. McAdams v. McCord, 584 F.3d 1111, 1113-15 (8th Cir. 2009); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (stating that "conclusory" allegations "are not entitled to the assumption of truth"). A complaint that merely offers "labels and conclusions…will not do." Twombly, 550 U.S. at 555.

### B. Allegations Sounding In Fraud Must Be Stated With Particularity

All averments of fraud must be alleged "with particularity." Fed. R. Civ. P. 9(b). The particularity requirement applies to all claims sounding in fraud, including claims under securities statutes, negligent misrepresentation, and aiding and abetting. Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997) (affirming dismissal of securities fraud claims not pleaded with particularity); Lincoln Sav. Bank v. Open Solutions, Inc., No. C12-2070, 2013 WL 3456951, at *11 (N.D. Iowa July 9, 2013) (dismissing negligent misrepresentation claim not pleaded with particularity); E-Shops Corp. v. U.S. Bank Nat. Ass'n, 678 F.3d 659, 663 (8th Cir. 2012) (particularity rule applies to aiding and abetting claims). Those "circumstances include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Weimer v. Int'l Flavors & Fragrance, 240 F.R.D. 431, 436 (N.D. Iowa 2007) (internal quotes omitted).

### C. The Court May Consider Documents Embraced By The First Amended Complaint

"Undisputed documents that are not physically attached to a complaint but are 'embraced by the pleadings' may be considered by a court without converting a motion to dismiss to one for summary judgment." Parnes, 122 F.3d at 546 n.9. If the complaint is contradicted by a document embraced by the complaint, the document controls. Ohlendorf v. Wells Fargo Bank N.A., No. C09-4028-PAZ, 2009 WL 2475294, at *2 (N.D. Iowa Aug. 11, 2009).

## II. HANSON'S SECURITIES FRAUD, FRAUD IN THE INDUCEMENT, AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW BECAUSE BFC WAS NOT THE MAKER OF ANY MISREPRESENTATIONS

Hanson's state securities law claims (Counts One, Two, Seven, and Eight), his fraudulent inducement claim (Count Three), and his negligent misrepresentation claims (Counts Four and Nine) are predicated on the notion that BFC is liable for the alleged misrepresentations of TNP and the Program. Hanson's claims are not supported by the law.

In deciding claims under the federal securities laws, the U.S. Supreme Court has held that only the actual "maker" of a false statement in offering documents is legally responsible for the statement. Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2304-05 (2011). The Janus Court defined the "maker" of the statement as "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Id. at 2302. "Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." Id. Thus, even where it is alleged that a defendant may have been "significantly involved" in the preparation of a prospectus, only the person with final authority over the statement can be considered its "maker." Id. at 2305.

The federal securities laws are materially similar to Cal. Corp. Code §§ 25401 and 25400, as well as the Act §§ 502.501 and 502.501A. Janus is the law of the land when it comes to analyzing claims under the federal securities laws. There is no reason to interpret the California or Iowa securities statutes differently. Viterbi v. Wasserman, 191 Cal. App. 4th 927, 939 (2011) ("[F]ederal cases construing federal securities laws are persuasive authority when interpreting [California] state securities law"); Martino-Catt v. E.I. duPont de Nemours & Co., 213 F.R.D. 308, 322 (S.D. Iowa 2003) (noting that "Iowa courts coordinate the interpretation and administration of Iowa's securities laws with related federal regulations").

10

The Janus holding is consistent with longstanding common law rules requiring a plaintiff in a fraud case to prove a misrepresentation by the defendant, and not some other person. Allegations that some other person made a fraudulent statement fail as a matter of law. E.F. Hutton Mort. Corp. v. Equitable Bank, N.A., 678 F. Supp. 567, 586 (D. Md. 1988) (holding that fraudulent inducement claim required proof of deceit by the person accused of fraudulent inducement); Masters v. San Bernardino Cnty. Employees Ret. Assn., 32 Cal. App. 4th 30, 40 n.6 (1995) (element of negligent misrepresentation is that "the defendant made the representation without a reasonable ground for believing it true"); Thomas v. Hickman, No. F06-0215A, 2006 WL 2868967, at *38 (E.D. Cal. Oct. 6, 2006) (dismissing fraud claim where "[t]he complaint fail[ed] to allege specific misrepresentations made by Defendant Madera, as opposed to other[s]"); Draper v. Wellmark, Inc., 478 F. Supp. 2d 1101, 1112 (N.D. Iowa 2007) ("negligent misrepresentation requires proof that the plaintiff justifiably relied on the representation made by the defendant").

Here, Hanson attempts to hold Defendants liable for the alleged misrepresentations of TNP. All of the alleged misrepresentations were contained in the PPM, and no other source. (FAC ¶ 97; see also PPM p. 2 (noting that the only authorized statements concerning the offering are contained in the offering memorandum). TNP, and not BFC, had "full, exclusive, and complete discretion to manage and control the business and affairs of the [Program]…" including the conduct of the offering. (PPM H-5 at ¶ 4.10; H-3 ¶ 2.02b.) Under Janus, it does not matter that BFC allegedly "participated" in the preparation of the PPM. The FAC does not allege that Defendants had any (let alone final) authority over the contents of the PPM. As a matter of law, all of the alleged misrepresentations contained in the PPM are attributed to TNP and the Program, and not to Defendants. Counts 1-4 and 7-9 of the FAC should therefore be dismissed.

11

III. **HANSON'S SECURITIES FRAUD, FRAUD IN THE INDUCEMENT, AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW BECAUSE BFC DID NOT HAVE A DUTY TO DISCLOSE INFORMATION TO HANSON**

The FAC devotes significant attention to the numerous ways in which the Program misrepresented:  (1) TNP's operation of the Program as a Ponzi scheme, and (2) the financial status of the guarantor, TNP.  Hanson does not allege that Defendants made any affirmative statements to him – about the Program or any other topic.  Indeed, the Defendants were prohibited from making such "disclosures" about the Program.  (See FAC ¶ 97; PPM p. 2.)  Thus, the FAC necessarily rests on alleged omissions of the Defendants – i.e., the Defendants failed to disclose that TNP operated the Program as a Ponzi scheme and failed to disclose that TNP's financial position was deteriorating.

The California and Iowa securities laws permit claims premised on omissions of material facts.  Cal. Corp. Code § 25401 (prohibiting omissions "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"); Cal. Corp. Code § 25400 (using similar language); IA Stat. § 502.501 (using similar language).  However, a person is not liable for an omission unless there is a duty to disclose.  Chiarella v. U. S., 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak").  The law is the same respecting common law fraud.  Williams v. Wraxall, 33 Cal. App. 4th 120, 132 n.9 (1995) (an element of fraud by concealment is that "defendant must have been under a duty to disclose the fact to the plaintiff"); Xay Fong v. All Lots, L.L.C., 707 N.W.2d 337 (Iowa Ct. App. 2005) (where a fraud claim is premised upon concealment of a material fact, "the concealment must be by a party under a duty to communicate the concealed fact").

A duty to disclose may arise as a result of prior statements – i.e., as necessary to ensure that prior statements are "not misleading."  See Cal. Corp. Code §§ 25400, 25401, IA Stat.

12

§ 502.501.  A duty to disclose may also arise where there is a fiduciary or "special relationship" between the parties.  Sarbaz v. Wachovia Bank, No. 10-03462 CRB, 2010 WL 4692047, at *2 (N.D. Cal. Nov. 10, 2010) ("[F]ailure to disclose material facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose"); Sinnard v. Roach, 414 N.W.2d 100, 105 (Iowa 1987) (where fraud arises from nondisclosure, "the misrepresentation must relate to a material matter known to the party which it is his legal duty to communicate to the other contracting party").

Here, as discussed supra, Defendants were not the makers of any representations, truthful or otherwise.  No duty to speak arose out of anything BFC said to Hanson because BFC did not say anything to Hanson.  Moreover, there is no "special relationship" between BFC and Hanson giving rise to an independent duty to speak.  Hanson was not and is not BFC's customer.

Hanson alleges, in conclusory fashion, that BFC "oversaw" the offering, but Hanson fails to allege with particularity what obligations were attendant to BFC's alleged "oversight" responsibility – including a "plausible" allegation that BFC's "oversight" role gave rise to a duty of disclosure.  Hanson alleges, in equally conclusory fashion, that BFC was the "underwriter" of the offering.  But again, the FAC fails to plausibly allege facts sufficient for this Court to conclude that BFC was, in fact, an "underwriter" of the Program, or that BFC's "underwriter" role carried with it a duty of disclosure.[3]  Plaintiff's conclusory allegations cannot withstand a motion to dismiss under Fed. R. Civ. P. 9(b).

---

[3] The definition of an underwriter primarily references those who purchase securities from an issuer with a view to the distribution of any security, as well as anyone who participates directly or indirectly in any such undertaking.  In re Lehman Bros. Sec. & Erisa Litig., 681 F. Supp. 2d 495, 499 (S.D.N.Y. 2010) aff'd sub nom In re Lehman Bros. Mortgage-Backed Sec. Litig., 650 F.3d 167 (2d Cir. 2011).  Here, BFC did not purchase any securities with a view to their distribution.  The securities were issued solely by the Program.  (PPM pp. 4, A-2.)  Even if BFC were an "underwriter," an "underwriter" is not legally required to conduct a due diligence investigation into a private offering.  In re Enron Corp. Sec. Lit., 761 F. Supp. 2d 504, 571-73 (S.D. Tex. 2011).

In reality, BFC was the Managing Broker-Dealer for the Program. There is no "special relationship" arising out of this role, and the FAC does not allege any facts sufficient to conclude otherwise. BFC had no authority to make any representations or provide any information to the Plaintiff, other than as set forth in the PPM. (PPM pp. 2.)

The California and Iowa courts have dismissed claims where the plaintiff has failed to plead circumstances giving rise to a duty of disclosure. Goodman v. Kennedy, 18 Cal. 3d 335, 340 (1976) (holding that claims under Cal. Corp. Code §§ 25400 and 25401 failed "for lack of any factual allegations giving rise to a duty to disclose"); Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n, 827 F. Supp. 2d 893, 907 (S.D. Iowa 2011) aff'd, 666 F.3d 1099 (8th Cir. 2012) (Iowa law) (dismissing fraud claim where defendant owed no legal duty to disclose). This Court should do the same. Counts 1-4 and 7-9 of the FAC should be dismissed.

## IV. HANSON'S NEGLIGENCE-BASED CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS OWE NO LEGAL DUTY TO HANSON

Defendants had no duty to conduct due diligence on behalf of Hanson. Broker-dealers such as BFC do not have a duty to complete due diligence, nor do broker-dealers have a duty to confirm the accuracy of statements in private placement memoranda. Brown v. J.P. Turner & Co., No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5-6 (N.D. Ga. May 17, 2011). This is so even if the broker-dealer received a fee for performing due diligence in connection with an offering. Id. at *5. Claimants must prove they reasonably relied on the broker-dealer's efforts. Id. If the private placement memorandum expressly advises potential investors to only rely on information provided by the issuer, any claimed reliance is not reasonable as a matter of law. Id.; see also Smith v. Questar Capital Corp., No. 12-2669, 2013 WL 3990319, at *12 (D. Minn. Aug. 2, 2013) (dismissing negligence claim because plaintiff "fail[ed] to identify any negligence case finding that a duty of due diligence exists between a broker-dealer and a purchaser of securities").

Here, as in <u>Brown</u> and <u>Questar</u>, Defendants owed no duty to Hanson because Hanson did not rely on BFC's due diligence in deciding whether to invest. In fact, Hanson expressly agreed otherwise:

> I acknowledge that I am basing my decision to invest in Notes on the Memorandum and I have relied only on the information contained in said Memorandum and <u>have not relied upon any representations made by any other person or any prior information</u>.

(PPM A-7 ¶ 2 (emphasis added); <u>see</u> <u>also</u> pp. ii; A-1.) Having relied solely on TNP and the Program for information concerning the investment, Hanson cannot, as a matter of law, state a claim for negligence or negligent misrepresentation against Defendants. Accordingly, Counts 4-5 and 9-10 should be dismissed.

**V.    HANSON'S FRAUD-BASED CLAIMS ARE BARRED BY THE BESPEAKS CAUTION DOCTRINE AND BECAUSE PLAINTIFF DID NOT RELY ON DEFENDANTS IN DECIDING WHETHER TO INVEST**

Hanson's claims are barred by the "bespeaks caution doctrine." The doctrine provides that forward-looking statements contained in an offering document will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided to investors. "Cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.'" <u>Parnes</u>, 122 F.3d at 548 (affirming dismissal of securities fraud claims under bespeaks caution doctrine); <u>see</u> <u>also</u> <u>McGonigle v. Combs</u>, 968 F.2d 810, 817 (9th Cir. 1992) (affirming summary judgment where statements in offering document were not material in light of their openly hypothetical nature).

Here, the PPM is replete with disclosures about the issuer (the Program) and its guarantor (TNP). Those disclosures are described in detail in the PPM. Those disclosures addressed risks attendant to the investment, the guarantor, and disclosed TNP's sole and absolute discretion concerning the operation of the business. Those disclosures indicated that the financial statements included with the PPM were <u>not</u> verified by an independent third party. Those

disclosures advised, and all investors agreed as a condition of their participation, to rely upon their own examination (not BFC) in deciding whether to invest in the Program.

Those disclosures rendered the misrepresentations alleged in the FAC immaterial as a matter of law. Materiality is an essential element of the Hanson's securities law claims. Cal. Corp. Code §§ 25401, 25400 (requiring a misrepresentation of "material" fact); IA Stat. §§ 502.501 (same); Sitrick v. Citigroup Global Mkts., Inc., No. 05-3731, 2009 WL 1298148, at *8-10 (C.D. Cal. Apr. 30, 2009) (dismissing claims under Cal. Corp. Code §§ 25400 and 25401 under "bespeaks caution" doctrine and noting the doctrine may be raised by a motion to dismiss).

"Justifiable" or "reasonable" reliance are essential elements of a claim for common law fraud and negligent misrepresentation under California and Iowa law. Gil v. Bank of Am., N.A., 138 Cal. App. 4th 1371, 1381 (2006) (describing elements of fraud claim under California law); Century Sur. Co. v. Crosby Ins., Inc., 124 Cal. App. 4th 116, 129 (2004) (describing elements of negligent misrepresentation claim under California law); Fry v. Mount, 554 N.W.2d 263, 265 (Iowa 1996) (describing elements of negligent misrepresentation claim under Iowa law). Because Hanson specifically agreed that he did not rely (reasonably or otherwise) on Defendants in deciding whether to invest, Hanson's claims for common law fraud and negligent misrepresentation also fail. Thus, Counts 1-4 and 7-9 of the FAC should be dismissed.

## VI. HANSON'S CLAIMS UNDER CAL. CORP. CODE §§ 25401, 25501, AND 25504 FAIL AS A MATTER OF LAW BECAUSE HANSON DID NOT PURCHASE SECURITIES FROM BFC

Count One of the FAC is for violation of Cal. Corp. Code § 25401. A claim under § 25401 arises where the maker communicates "an untrue statement of a material fact" or "omits to state a material fact necessary in order to make the statements made…not misleading." Id. Section 25401 does not include any remedial provisions; the remedy for a violation of § 25401 is contained in Cal. Corp. Code § 25501, which states that, "…[a]ny person who violates

16

Section 25401 shall be liable to the person who purchases a security <u>from him</u>…" Cal. Corp. Code § 25501 (emphasis added). The Ninth Circuit has held that liability under § 25401 is limited to actual, literal sellers of a security; strict privity is required. <u>S.E.C. v. Seaboard Corp.</u>, 677 F.2d 1289, 1296 (9th Cir. 1982).

Here, Hanson alleges that BFC "offered for sale and sold [Program] notes to Plaintiff and the members of the class." (FAC ¶ 122.) Hanson's allegations are directly contradicted by the PPM, which states that the Program is the "issuer" of the notes. (PPM pp. 4, A-2, A-6.) All subscription agreements were sent directly to the Program, and the Program had the right to reject any investor's application. (<u>Id.</u>) Even if BFC was a "seller" of the Program notes to <u>some</u> investors, BFC did not sell any notes to Hanson. Hanson was not BFC's customer. As a result, there is no privity, and § 25501 does not apply.

Hanson alleges that, even if BFC is not the "seller" of the notes, BFC is nonetheless liable under Cal. Corp. Code § 25504 because BFC "materially aided the acts or transactions constituting violations of § 25401." (FAC ¶ 126.) Cal. Corp. Code § 25504 states, in pertinent part, that:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person…

Cal. Corp. Code § 25504.

As noted above, a cause of action under § 25501 is derived from § 25401. A cause of action under § 25504 is derived from § 25501. The courts have held that because the causes of action provided for in both §§ 25501 <u>and</u> 25504 are by their terms derived from § 25401, a failure to show strict privity will defeat these derivative claims. <u>In re Diasonics Sec. Lit.</u>, 599 F. Supp.

447, 459 (N.D. Cal. 1984). Because BFC did not sell any notes to Hanson (Hanson was not BFC's customer), § 25504 does not apply.

## VII. HANSON'S CLAIMS AGAINST BERTHEL SHOULD BE DISMISSED

Hanson named Berthel as a defendant on each of the legal claims pleaded in the FAC. All of Hanson's claims against Berthel fail for at least three reasons. First, Hanson has not pleaded a viable claim for violations of any securities laws. A claim for "control person" liability first requires a primary violation by the principal wrongdoer. In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 961 (8th Cir. 2008) (affirming dismissal of federal control person liability claims because plaintiff had not shown an underlying violation of the securities laws); Jackson v. Fischer, No. C 11-2753, 2013 WL 1089860, at *13 (N.D. Cal. Mar. 15, 2013) ("[I]n the absence of a viable claim of primary liability, plaintiff cannot state a claim…for control person liability under § 25504…"). At most, Hanson has alleged a primary violation of the securities laws by TNP and/or the Program. Berthel is not a "control person" of TNP or the Program.

Second, "control person liability is statutorily imposed, limited to securities law, and does not exist at common law…" See, e.g., Lillard v. Stockton, 267 F. Supp. 2d 1081, 1120 (N.D. Okla. 2003) (dismissing negligence claim premised on "control person" theory); Berglund v. Cynosure, Inc., 502 F. Supp. 2d 949, 955 (D. Minn. 2007) (dismissing control person liability theory for common law fraud because plaintiffs "cannot extend control person liability beyond the circumstances provided for" by statute).

Third, courts have rejected "control person" liability theories where the controlling person "was not a participant in activities which are claimed to violate the securities laws." Burgess v. Premier Corp., 727 F.2d 826, 832 (9th Cir. 1984) (internal quotations and citations omitted). Hanson identified Berthel's titles at BFC and alleged that Berthel directs the "management and policies" of BFC. (FAC ¶ 22.) Hanson merely assumes that Berthel controlled BFC's

18

"preparation and dissemination of misleading offering documents" and BFC's "management and oversight of the TNP 2008 Offering." (See FAC ¶ 96.) Hanson says <u>nothing specific</u> about BFC's "preparation" of the PPM. Hanson says even less about Berthel's role in the preparation. Hanson says <u>nothing specific</u> about BFC's "management" or "oversight" of the offering. Hanson says even less about Berthel's role in the "management" or "oversight" of the offering. Just what did Berthel do? Under Fed. R. Civ. P. 9(b), the FAC must answer this question. It does not. As a result, all of the claims against Berthel must be dismissed.

## VIII.   HANSON'S AIDING AND ABETTING CLAIMS FAIL AS A MATTER OF LAW

Counts Six and Eleven allege aiding and abetting fraud under California and Iowa law. "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." <u>Fiol v. Doellstedt</u>, 50 Cal. App. 4th 1318, 1325-26 (1996) (internal ellipses omitted) (emphasis added). A separate and independent duty to the plaintiff must exist, and it must be shown that the defendant breached that duty. <u>Id.</u> Moreover, "an aider and abettor to a fraud must have actual and not merely constructive knowledge of the fraud at the time the alleged assistance is rendered." <u>Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.</u>, No. 04-1234, 2006 WL 6935318, at * (C.D. Cal. June 20, 2006) <u>aff'd</u>, 270 F. App'x 570 (9th Cir. 2008); <u>see</u> <u>also</u> <u>Varga v. U.S. Bank Nat. Ass'n</u>, No. 12-3180, 2013 WL 3338750, at *6 (D. Minn. July 2, 2013) (dismissing aiding and abetting claim because "[c]onstructive knowledge will not suffice, and it is not enough to plead awareness of the conduct in question [or] that it raised 'red flags'" (internal citations omitted)).

Here, Hanson alleges that "Defendants were aware of…TNP's deteriorating financial condition because they became privy to TNP's financial statements . . . by virtue of participating" in the Program and the Unrelated Offerings. (FAC ¶ 170.) At most, Hanson has

pled constructive knowledge of TNP's "fraudulent scheme."  Constructive knowledge is not enough.

Moreover, Hanson's aiding and abetting claims are premised on BFC's alleged role in the "preparation" of the PPM, and BFC's ostensible "oversight" and "due diligence" responsibilities arising from BFC's role as the Managing Broker-Dealer and "underwriter" of the offering. (See, e.g., FAC ¶ 171.)  Plaintiff offered no factual detail to support these allegations.  As such, they "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 678-79.  Under Fed. R. Civ. P. 9(b), Hanson's aiding and abetting claims (Counts Six and Eleven) must be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, the First Amended Class Action Complaint should be dismissed in its entirety, with prejudice.

          /s/ Aaron R. Hartman
Vincent D. Louwagie (pro hac vice)
Aaron R. Hartman (pro hac vice)
ANTHONY OSTLUND BAER & LOUWAGIE P.A.
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel:  612-349-6969; Fax:  612-349-6996
Email:  vlouwagie@aoblaw.com
          ahartman@aoblaw.com

and

Stephen J. Holtman (AT0003594)
Paul D. Gamez (AT0002806)
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel:  319-366-7641; Fax:  319-366-1917
Email:  sholtman@simmonsperrine.com
          pgamez@simmonsperrine.com

ATTORNEYS FOR DEFENDANTS