IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JON HANSON, individually and on
behalf of all others similarly situated,

          Plaintiffs,

vs.

BERTHEL FISHER & COMPANY
FINANCIAL SERVICES, INC. and
THOMAS JOSEPH BERTHEL,

          Defendants.

No. 13-CV-67-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.    **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

II.   **PROCEDURAL HISTORY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

III.  **SUBJECT MATTER JURISDICTION.** . . . . . . . . . . . . . . . . . . . . . . **4**

IV.  **STANDARD OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

V.   **FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

    *A.*    *Parties.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *B.*    *The TNP 2008 Participating Notes Program.* . . . . . . . . . . . . . . **9**
    *C.*    *TNP's Deteriorating Financial Condition.* . . . . . . . . . . . . . . . **10**
    *D.*    *TNP 2008 Participating Notes Program Private Placement*
          *Memorandum.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
    *E.*    *Plaintiffs Invest in the TNP 2008 Participating Notes Program.* . . . . **13**

VI.  **SECURITIES LAW VIOLATIONS (COUNTS I, II ,VII AND VIII).** . . . . . **14**

    *A.*    *Did Berthel Fisher Have a Duty to Disclose and/or Investigate?.* . . . **14**
         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
         *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
         *3.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
    *B.*    *Is Berthel Fisher the "Maker" of the Alleged Misrepresentations?.* . . **21**
    *C.*    *The Bespeaks Caution Doctrine.* . . . . . . . . . . . . . . . . . . . . . . **25**
         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

|  |  | 2. | *Applicable law.* | 27 |
|  |  | 3. | *Application.* | 29 |
|  | *D.* | *Count I.* | | 32 |
|  |  | 1. | *Are Defendants liable under California Corporations Code section 25401?.* | 34 |
|  |  |  | a. *Parties' arguments.* | 34 |
|  |  |  | b. *Analysis.* | 34 |
|  |  | 2. | *Are Defendants liable under California Corporations Code section 25504?.* | 36 |
|  |  |  | a. *Privity.* | 36 |
|  |  |  | i. *Parties' arguments.* | 36 |
|  |  |  | ii. *Applicable law.* | 37 |
|  |  |  | iii. *Application.* | 39 |
|  |  |  | b. *Materially aid.* | 41 |
|  |  |  | i. *Parties' arguments.* | 41 |
|  |  |  | ii. *Applicable law.* | 42 |
|  |  |  | iii. *Application.* | 43 |
|  |  |  | c. *Summary.* | 44 |
|  | *E.* | *Count II.* | | 44 |
|  |  | 1. | *Parties' arguments.* | 46 |
|  |  | 2. | *Analysis.* | 48 |
|  | *F.* | *Count VII.* | | 48 |
|  |  | 1. | *Iowa Code section 502.501.* | 50 |
|  |  | 2. | *Iowa Code section 502.509.* | 51 |
|  |  |  | a. *Parties' arguments.* | 51 |
|  |  |  | b. *Analysis.* | 52 |
|  | *G.* | *Count VIII.* | | 57 |
| *VII.* | **FRAUD AND AIDING AND ABETTING FRAUD (COUNTS III, VI AND XI).** | | | 58 |
|  | *A.* | *Count III.* | | 58 |
|  |  | 1. | *Parties' arguments.* | 59 |
|  |  | 2. | *Applicable law.* | 60 |
|  |  | 3. | *Application.* | 62 |
|  | *B.* | *Counts VI and XI.* | | 63 |
|  |  | 1. | *Parties' arguments.* | 64 |
|  |  | 2. | *Analysis.* | 64 |
| *VIII.* | **NEGLIGENCE AND NEGLIGENT MISREPRESENTATION (COUNTS IV, V, IX AND X).** | | | 65 |

    *A.*     ***Negligent Misrepresentation.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **65**

    *B.*     ***Negligence.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **67**

*IX.*   ***CONTROL PERSON LIABILITY.*** . . . . . . . . . . . . . . . . . . . . . . . . . **68**

    *A.*     ***Parties' arguments.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **69**

    *B.*     ***Applicable law.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **69**

    *C.*     ***Application.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **70**

*X.*    ***CONCLUSION.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **72**

## *I.  INTRODUCTION*

The matter before the court is Defendants Berthel Fisher and Company Financial Services, Inc. ("Berthel Fisher") and Thomas Joseph Berthel's (collectively, "Defendants") "Motion to Dismiss" ("Motion") (docket no. 22).

## *II.  PROCEDURAL HISTORY*

On November 4, 2013, Plaintiff Jon Hanson, individually and on behalf of all others similarly situated ("Plaintiffs"), filed an Amended Class Action Complaint ("Complaint") (docket no. 16) against Defendants. The Complaint asserts the following eleven claims against Defendants: (1) Count I asserts that Defendants violated California Corporations Code section 25401, or, in the alternative, California Corporations Code section 25504; (2) Count II asserts that Defendants violated California Corporations Code section 25400; (3) Count III asserts that Defendants unlawfully induced a contract by knowing misrepresentations, in violation of California Corporations Code section 1572 and California common law; (4) Count IV asserts that Defendants made negligent misrepresentations in violation of California common law; (5) Count V asserts that Defendants were negligent in violation of California common law; (6) Count VI asserts that Defendants aided and abetted fraud in violation of California common law; (7) Count VII asserts that Defendants violated Iowa Uniform Securities Act section 502.501; (8) Count VIII asserts that Defendants violated Iowa Uniform Securities Act section 502.501A; (9) Count IX asserts that Defendants made negligent misrepresentations in

3

violation of Iowa common law; (10) Count X asserts that Defendants were negligent in violation of Iowa common law; and (11) Count XI asserts that Defendants aided and abetted fraud in violation of Iowa common law.

On November 13, 2013, Defendants filed the Motion. On December 3, 2013, Plaintiffs filed a Resistance (docket no. 25). On December 13, 2013, Defendants filed a Reply (docket no. 26). On December 19, 2013, Plaintiffs filed a Sur-Reply (docket no. 29). Neither party requests oral argument on the Motion, and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has subject matter jurisdiction over Plaintiffs' claims in the class-action Complaint against Defendants pursuant to 28 U.S.C. § 1332(d). *See* 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds . . . $5,000,000 . . . and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant.").

In the Complaint, the proposed class is defined as "[a]ll persons and entities that purchased, subscribed and paid for, or otherwise acquired securities in the [Thompson National Properties, LLC 2008 Participating Notes Program, LLC, ("TNP 2008 Participating Notes Program")] pursuant to the TNP 2008 [Participating Notes Program] offering between December 2008 and March 2010." Complaint ¶ 108.

Plaintiff Jon Hanson is a citizen of Colorado. Defendant Berthel Fisher is an Iowa company with its principal place of business in Marion, Iowa. Defendant Thomas Joseph Berthel was Berthel Fisher's chief executive officer and chairman of its board of directors and an indirect owner of Berthel Fisher at all times relevant to the instant action.

### IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ.

P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl.*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl.*, 550 U.S. at 555) (internal quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

With respect to claims alleging fraud, Federal Rule of Civil Procedure Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The plain language of Rule 9(b) "requires a plaintiff to allege with particularity the facts constituting

the fraud." *Indep. Bus. Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d 698, 702 n.2 (8th Cir. 1997). A plaintiff may not make "conclusory allegations." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997). Conclusory allegations are insufficient because "[o]ne of the primary purposes of this rule is to facilitate a defendant's ability to respond to and to prepare a defense to a plaintiff's [fraud] charges." *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985).

"To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In other words, Rule 9(b) demands that plaintiffs "identify who, what, where, when, and how." *United States ex. rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

The Eighth Circuit Court of Appeals has cautioned that Rule 9(b) is to be interpreted "'in harmony with the principles of notice pleading.'" *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). "Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain 'a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920). For example, when alleging fraudulent misrepresentation, Rule 9(b) requires a plaintiff to plead the circumstances constituting the fraud with particularity, while knowledge and intent may be pled generally. *See Bennett v. Berg*, 685 F.2d 1053, 1062 n.12 (8th Cir. 1982).

## V. FACTUAL BACKGROUND

Accepting all factual allegations in the Complaint as true and drawing all reasonable

inferences in favor of the Plaintiffs, the facts are as follows:

## A. *Parties*

Berthel Fisher was the underwriter, promoter and managing broker-dealer of the TNP 2008 Participating Notes Program. Thomas Joseph Berthel was, at times relevant to the instant action, Berthel Fisher's chief executive officer and chairman of the board, supervising and/or directing its securities business and overseeing its compliance with securities rules and regulations. Thompson National Properties, LLC ("TNP") is a Delaware limited liability company whose purpose is to "organize real estate investment programs, raise funds for such programs from investors nationwide through public or private offerings, and thereafter manage such programs and provide other services to them." Complaint ¶ 3. "To accomplish its purpose, TNP, directly and through wholly owned and/or controlled affiliates, purported to engage in real estate transactions, organize real estate programs, promote such programs, and/or conduct private or public offerings to recruit investors in such programs . . . ." *Id.* ¶ 27. However, in reality, TNP commingled investor funds from various programs and used the investor money to make distribution payments to other investors "in Ponzi-scheme fashion." *Id.* ¶ 4. The TNP 2008 Participating Notes Program was a Delaware limited liability company with its principal place of business in Irvine, California. *Id.* ¶¶ 47-48. TNP was the parent company of the TNP 2008 Participating Notes Program. *Id.* ¶ 39.

In the Complaint, Plaintiffs assert that Berthel Fisher, under the direction and supervision of Thomas Joseph Berthel, was the underwriter, promoter and managing broker-dealer for several of TNP's private placement offerings, including in the TNP 2008 Participating Notes Program, the real estate investment program at issue in the instant matter. TNP commenced a private placement offering of promissory notes in the TNP 2008 Participating Notes Program on or about December 9, 2008. *Id.* ¶ 38. TNP organized the TNP 2008 Participating Notes Program to "offer investors nationwide the

opportunity to participate in investments in the real estate market." *Id*. ¶ 2. Berthel Fisher played a key role recruiting investors to participate in the TNP 2008 Participating Notes Program, preparing and disseminating the TNP 2008 Participating Notes Program's Private Placement Memorandum ("Memorandum") (docket no. 22-2)[1] and overseeing the preparation and execution of the TNP 2008 Participating Notes Program securities offering. *See* Memorandum at 5 n.1. Specifically, the Memorandum states that:

> The Notes will be offered and sold on a "best efforts" basis by broker-dealers, or the Selling Group, who are members of the Financial Industry Regulatory Authority, Inc. [("FINRA")]. Berthel Fisher . . . , a member of FINRA, will act as managing broker-dealer, or Managing Broker-Dealer, and will receive a managing broker-dealer fee of 2.0% of the gross proceeds of the Offering, or Gross Proceeds, selling commissions of up to 7.0% of the Gross Proceeds and a nonaccountable marketing and due diligence allowance of 1.0% of the Gross Proceeds.

*Id*. The Memorandum included several material misrepresentations and omissions. Berthel Fisher helped raise $26,224,903 in investments through the TNP 2008 Participating Notes Program. Complaint ¶ 11.

Berthel Fisher was involved in other TNP programs as well. On approximately June 3, 2008, TNP initiated a private placement offering of promissory notes in the TNP 12% Notes Program, LLC, which purported to fund loans to or equity investments in TNP or its affiliates. *Id*. ¶ 33. Berthel Fisher helped promote the TNP 12% Notes Program. *Id*.

_____

[1] Although "'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)). The court finds, and the parties do not dispute, that the Memorandum is "necessarily embraced by the complaint" and the court may properly consider it in addressing the Motion.

¶ 35. In addition, on approximately June 23, 2008, TNP initiated a private placement offering in TNP Vulture Fund III, LLC, a real estate investment fund that purported to invest in real estate opportunities. *Id.* ¶ 36. Berthel Fisher helped promote the TNP Vulture Fund. *Id.* ¶ 37.

The class of Plaintiffs includes "[a]ll persons and entities that purchased, subscribed and paid for, or otherwise acquired securities in the TNP 2008 [Participating Notes Program] pursuant to the TNP 2008 [Participating Notes Program] offering between December 2008 and March 2010." *Id.* ¶ 108. Hanson invested $75,000 in the TNP 2008 Participating Notes Program. *Id.* ¶ 100.

## B. The TNP 2008 Participating Notes Program

On December 9, 2008, TNP initiated a private placement offering of promissory notes related to the TNP 2008 Participating Notes Program. *Id.* ¶ 38. The TNP 2008 Participating Notes Program offered investors the opportunity to invest their funds in real estate and real estate-related debt. *Id.* Berthel Fisher was a promoter of the TNP 2008 Participating Notes Program and was "instrumental" in preparing and disseminating the Memorandum and oversaw the preparation and execution of its securities offering. *Id.* ¶ 6. The TNP 2008 Participating Notes Program "issued three classes of notes, which purported to pay between 10 [and] 13% interest" on investments. *Id.* ¶ 51.

Berthel Fisher helped TNP raise approximately $26,224,903 from public investors, including Plaintiffs, in the offering related to the TNP 2008 Participating Notes Program. *Id.* ¶ 11. Berthel Fisher's relationship with TNP, along with the fact that Berthel Fisher had participated in prior TNP offerings, "gave it extensive access to TNP . . . [,] allow[ing] Berthel Fisher to gain knowledge of the misconduct and red flags indicating misconduct that surrounded TNP and its offerings." *Id.* ¶ 9. TNP conducted the offerings for the TNP 2008 Participating Notes Program, the TNP 12% Notes Program, LLC and the TNP Vulture Fund III, LLC at the same time, *id.* ¶44, and "used investor money to

pay distributions to investors in other TNP programs in Ponzi-scheme fashion," *id.* ¶ 46.

As the managing broker-dealer and underwriter of the TNP 2008 Participating Notes Program, Berthel Fisher, directly and through its agents, distributed the Memorandum to investors, including Plaintiffs, "and offered and sold them securities issued by the TNP 2008 [Participating Notes Program]." *Id.* ¶ 92.

### C. TNP's Deteriorating Financial Condition

As of April 2008, TNP had lost $444,421. *Id.* ¶ 53. By September 2008, those losses escalated to $4,058,000. Furthermore, from April 2008 to September 2008, TNP's equity fell from $8,505,897 to $5,393,188. *Id.* As of November 2008, two TNP real estate operations had defaulted on financial obligations of approximately $1,300,000. *Id.* ¶ 54. From January 2009 to September 2009, TNP incurred approximately $16,000,000 in operating losses and for the year ending on December 31, 2009, TNP incurred approximately $25,839,000 in operating losses, resulting in a negative net equity of approximately $13,580,000. *Id.* ¶ 55.

On approximately April 26, 2010, TNP initiated a private placement offering in connection with the TNP Profit Participating Program, LLC. *Id.* ¶ 42. This program was organized to operate similarly to the TNP 2008 Participating Notes Program, with the proceeds of this offering to go towards investments in real estate and real estate-related debt. *Id.* The Profit Participating Program, LLC Private Placement Memorandum "disclosed that 'TNP has suffered losses since its inception,' and that since 2008, TNP had guaranteed the unsecured debt obligations of the TNP 12% Program and the TNP 2008 [Participating Notes Program], which together had raised almost $50,000,000." *Id.* ¶ 43.

### D. TNP 2008 Participating Notes Program Private Placement Memorandum

The Memorandum required each investor in the TNP 2008 Participating Notes Program, including Plaintiffs, to acknowledge in writing that he or she based his or her decision to invest in the TNP 2008 Participating Notes Program on the Memorandum and

relied only on the information in the Memorandum, and not upon any representations made by any other person. *Id.* ¶ 97.

Plaintiffs allege that the Memorandum contained several material misrepresentations and omissions. *Id.* ¶ 8. Specifically, Plaintiffs allege that the Memorandum contained the following misrepresentations and omissions: (1) the Memorandum stated that "investors' money would be used to fund or invest in real estate and real-estate related debt"; (2) the Memorandum stated that, if "$25,000,000 is raised, of 100% of the investors' proceeds, 11% would be used for offering-related expenses and commissions and the remaining 89% would be used for 'investments'"; (3) the Memorandum omitted "that investor proceeds would be used for Ponzi-like payments of 'distributions' to earlier TNP 2008 [Participating Notes Program] investors, commingled with funds from other TNP programs, and/or transferred to TNP affiliates in related party transactions that were not in [the] TNP 2008 [Participating Notes Program]'s best interest"; (4) the Memorandum "emphasized the role that TNP played in organizing the TNP 2008 Offering," but omitted any statements as to "TNP's rapidly deteriorating financial situation"; (5) the Memorandum "assured investors that their investment and the interest on that investment would be guaranteed by TNP"; (6) a September 30, 2008 TNP financial statement, attached to the Memorandum ("TNP Balance Sheet"), showed $21,801,019 in assets, which included $6,430,966 in Notes Receivable from a related party that "were uncollectible loans to TNP founder Tony Thompson and/or entities controlled by him"; (7) the Memorandum omitted any disclosures "that the TNP Balance Sheet did not accurately reflect TNP's finances"; (8) the "Risks" section of the Memorandum did not disclose that TNP's losses were increasing and did "not mention possible risks to [the] TNP 2008 [Participating Notes Program]'s operations and success arising out of TNP's growing . . . financial problems"; (9) the Memorandum "emphasized . . . TNP management's 'extensive experience' in real estate"; (10) the Memorandum "failed to disclose that TNP was conducting other offerings through

misrepresentations and omissions . . . and was converting funds invested in such offerings by misusing such funds and commingling them without disclosure to, and permission from, investors"; (11) and the Memorandum specified several "Events of Default" that would provide investors with remedies and trigger the acceleration of their notes, including "[a]n event of insolvency or other similar event with respect to TNP" and "[b]reaches of [Memorandum] 'Covenants' such as violations of the 'Use of Proceeds' clause, which mandated that investors' money be used to fund or invest in real estate and real estate-related debt," however, the Memorandum did not state that "Events of Default had already occurred as a result of TNP's insolvency or similar events and because of the violation of the Use of Proceeds clause." *Id.* ¶¶ 66-68, 70, 72-80.

Plaintiffs further allege that Berthel Fisher was aware of TNP's deteriorating financial condition and knew that the Memorandum failed to disclose the true state of TNP's financial condition to potential investors because Berthel Fisher served as a broker-dealer for other TNP-sponsored programs. Berthel Fisher was also aware of the "concomitancy of the multiple offerings for TNP programs, designed to raise funds for the same types of investments" and of evidence that TNP was commingling funds. *Id.* ¶ 86.

However, "Berthel Fisher failed to conduct adequate due diligence as to TNP and the TNP 2008 [Participating Notes Program]." *Id.* ¶ 84. This failure was in part because Berthel Fisher made commissions as high as 9% and received a 1% due diligence fee for its role in relation to the TNP 2008 Participating Notes Program. *Id.* ¶ 88. In addition, Berthel Fisher entered into an indemnification agreement with the TNP 2008 Participating Notes Program, providing that the TNP 2008 Participating Notes Program would indemnify Berthel Fisher from civil liabilities, including liabilities under the Securities Act, arising out of or in relation to the TNP 2008 Participating Notes Program. *Id.* ¶ 89. Finally, "Berthel Fisher's ability to conduct adequate due diligence was further impaired by the conflict of interest in which Berthel Fisher put itself when it, in effect, became an

equity partner in the TNP 2008 [Participating Notes Program]," since it was "promised 10% of the TNP 2008 [Participating Notes Program]'s profits" "[f]or its role in promoting the TNP 2008 [Participating Notes Program]." *Id.* ¶¶ 89-90.

### E. Plaintiffs Invest in the TNP 2008 Participating Notes Program

The Memorandum required every investor in the TNP 2008 Participating Notes Program, including Plaintiffs, "to acknowledge in writing that he [or she] had based his [or her] decision to invest in the TNP 2008 [Participating Notes Program] on the [Memorandum] and had relied 'only on the information contained in said [Memorandum] and ha[d] not relied upon any representations made by any other person.'" *Id.* ¶ 97. From December 2008 to March 2010, over 200 investors, including Plaintiffs, invested in the TNP 2008 Participating Notes Program and relied on the Memorandum. The TNP 2008 Participating Notes Program raised $26,224,903 from investors through the use of the misleading Memorandum. Hanson invested $75,000 in the TNP 2008 Participating Notes Program. Prior to making his investment, Hanson received the Memorandum and made his investment in reliance on the information in the Memorandum, which he believed to be true and accurate. *Id.* ¶ 100.

In 2012, the TNP 2008 Participating Notes Program defaulted on payments owed to investors. In the Memorandum, TNP guaranteed the investment and the interest on that investment, but it failed to honor that guarantee. On June 5, 2013, FINRA filed an "Order Accepting Offer of Settlement" between the Department of Enforcement of FINRA and Wendy Worcester. Order Accepting Offer of Settlement (docket no. 1-1).[2] Worcester was the chief administrative officer at TNP and the co-chief compliance officer of TNP Securities, LLP, a wholly owned subsidiary of TNP whose purpose was to "act as a

---

[2] The court notes that plaintiffs attached the Order Accepting Offer of Settlement to their original complaint (docket no. 1). However, the amended Complaint supersedes the original complaint and the Order Accepting Offer of Settlement, although referenced in the Complaint, was not reattached.

wholesale broker-dealer for offerings of TNP and its affiliated entities." *Id.* at 3. In the Order Accepting Offer of Settlement, FINRA sanctioned Worcester for several violations, including for failing to adequately investigate the TNP 2008 Participating Notes Program, among other programs, before promoting them to investors. *Id.* at 8-10. Furthermore, FINRA found that Worcester failed to conduct adequate due diligence with respect to the TNP 2008 Participating Notes Program offering because "the representations in the [Memorandum] regarding the financial condition of TNP had become materially misleading in that they failed to disclose adequately the true deteriorating financial condition of TNP and its ability to fulfill its obligations regarding guaranty of principal and interest." *Id.* at 9.

## VI. SECURITIES LAW VIOLATIONS (COUNTS I, II, VII AND VIII)

### A. Did Berthel Fisher Have a Duty to Disclose and/or Investigate?

In the Complaint, Plaintiffs allege that Berthel Fisher "assisted in the promotion of several TNP programs as a [m]anaging [b]roker-[d]ealer, underwriter, and/or retail broker." Complaint ¶ 31. With respect to the TNP 2008 Participating Notes Program, Plaintiffs allege that "Berthel Fisher oversaw the securities offering for the TNP 2008 [Participating Notes Program] to investors, as [m]anaging [b]roker-[d]ealer and underwriter." *Id.* ¶ 40; *see also id.* ¶ 83 ("As the underwriter and [m]anaging [b]roker-[d]ealer for the TNP 2008 [Participating Notes Program], Berthel Fisher received a 1% 'due diligence' fee of the TNP 2008 offering proceeds, which proceeds totaled over $26 million."); *id.* ¶ 92 ("In its capacity of [m]anaging [b]roker-[d]ealer and underwriter of the TNP 2008 [Participating Notes Program] offering of securities to investors, including Plaintiff, Berthel Fisher, directly and/or through its agents, approached the TNP 2008 [Participating Notes Program] investors, including Plaintiff, distributed the . . . [Memorandum] to them, and offered and sold them securities issued by the TNP 2008 [Participating Notes Program]."). In addition, the Memorandum states that the TNP 2008

> [n]otes will be offered and sold on a 'best efforts' basis by broker-dealers, or the Selling Group, who are members of . . . FINRA. Berthel Fisher . . . , a member of FINRA, will act as managing broker-dealer, and will receive a managing broker-dealer fee of 2.0% of the gross proceeds of the Offering . . . selling commissions of up to 7% of the Gross Proceeds and a nonaccountable marketing and due diligence allowance of 1.0% of the Gross Proceeds.

Memorandum at 5 n.1. According to Plaintiffs, Berthel Fisher failed to conduct adequate due diligence and failed "to adequately investigate . . . red flags" "surrounding both TNP and the TNP 2008 [Participating Notes Program]." Complaint ¶¶ 87, 85.

### 1. Parties' arguments

In the Motion, Defendants contend that the court should dismiss Plaintiffs' claims in Counts I, II, III, IV, V, VII, VIII, IX and X[3] because they owed no duty to Plaintiffs. Defendants assert that they were under no duty to disclose to Plaintiffs because, although a duty to disclose may arise "as a result of prior statements—i.e., as necessary to ensure that prior statements are 'not misleading,'" or when there is a fiduciary relationship between the parties, neither of these situations is present in the instant case because Defendants did not make the alleged misrepresentations in the Memorandum—TNP did—and because Plaintiffs failed to sufficiently plead that Defendants oversaw the offering or acted as an underwriter. Brief in Support of the Motion (docket no. 22-1) at 18-19. Defendants further contend that an underwriter refers to "those who purchase securities from an issuer with a view to the distribution of any security, as well as anyone who participates directly or indirectly in any such undertaking." *Id.* at 19 n.3 (citing *In re Lehman Bros. Sec. & ERISA Litig.*, 681 F. Supp. 2d 495, 499 (S.D.N.Y. 2010), *aff'd*,

---

[3] Accordingly, this defense applies to several Plaintiffs' claims that do not assert securities law violations. Nonetheless, the court finds it appropriate to discuss this defense here and will refer back to this section when it addresses those claims *infra*.

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011)). According to Defendants, Berthel Fisher was not an underwriter because the TNP 2008 Participating Notes Program notes were solely issued by TNP and/or the TNP 2008 Participating Notes Program, not Defendants. In the Reply, Defendants further argue that Berthel Fisher is not an underwriter because this case involves a private securities offering, not a public offering, and, thus, Berthel Fisher cannot qualify as an underwriter. Furthermore, Defendants argue that, even if Berthel Fisher was an underwriter to the TNP 2008 Participating Notes Program, Defendants were not required to conduct a due diligence investigation on the offering. Rather, Berthel Fisher "was the [m]anaging [b]roker-[d]ealer for the [TNP 2008 Participating Notes Program]. There is no 'special relationship' arising out of this role." *Id.* at 20.

In the Resistance, Plaintiffs contend that Berthel Fisher acted as the underwriter for the TNP 2008 Participating Notes Program securities offering and that Defendants' attempt to distinguish a "managing broker-dealer" from an "underwriter" is a "distinction without a difference" because the terms "are used interchangeably in the securities industry in connection with the issuance of securities." Resistance at 12. Plaintiffs argue that "Berthel Fisher meets or exceeds the 'broad' definition of underwriter with respect to the TNP 2008 [Participating Notes Program] offering" because the Memorandum "explicitly states that" the notes would be offered on a best efforts basis with Berthel Fisher acting as the managing broker-dealer and because Berthel Fisher's actual role in the TNP 2008 Participating Notes Program indicated that it acted as an underwriter because: (1) "it undertook to offer and sell the TNP 2008 securities 'on a best efforts basis'"; (2) "it was paid a managing broker-dealer fee, a marketing allowance, due diligence fees, and organizational and offering expenses"; and (3) "it recruited, organized, [and] managed a selling group of broker-dealers that helped it promote the [TNP 2008 Participating Notes Program] to" investors and "negotiated their selling agreements." *Id.* at 13. In light of

its underwriter status, then, Plaintiffs contend that Berthel Fisher owed investors due diligence and disclosure duties.

Plaintiffs also argue that Berthel Fisher owed Plaintiffs a duty because: (1) Plaintiffs "were the foreseeable victims of the harm arising out of the TNP 2008 [Participating Notes Program], which Berthel Fisher promoted to them"; (2) Plaintiffs "were the third-party beneficiaries of the due diligence duties Berthel Fisher undertook for the TNP 2008 [Participating Notes Program] offering"; and (3) the shingle theory imposes a duty on Berthel Fisher. Resistance at 20. In the Reply, Defendants argue that Plaintiffs are not third-party beneficiaries under the Memorandum because Berthel Fisher "is not a party to, and has no obligations under" the Memorandum. Reply at 2. Defendants also argue that the shingle theory does not apply to this case because "Hanson was not [Berthel Fisher]'s customer, and [Berthel Fisher] made no recommendations to Hanson." *Id.* at 4.

### 2. *Applicable law*

The Securities Act of 1933 defines an "underwriter" as:

> [A]ny person who has purchased from an issuer with view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

15 U.S.C. § 77b(11); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 681 F. Supp. 2d. at 499 (holding that two rating agencies, Moody's and Standard & Poor's, were not underwriters within the meaning of the 1933 Securities Act because the rating agencies did

not "participate[] in the relevant 'undertaking'—that of purchasing the securities . . . at issue . . . 'from the issuer with a view to their resale'" (quoting 15 U.S.C. § 77b(11))); Cal. Corp. Code § 25022 ("'Underwriter' means a person who has agreed with an issuer or other person on whose behalf a distribution is to be made (a) to purchase securities for distribution or (b) to distribute securities for or on behalf of such issuer or other person or (c) to manage or supervise a distribution of securities for or on behalf of such issuer or other person."). For the purposes of the Securities Act of 1933, an underwriter includes those who conduct both firm commitment and best efforts underwritings. *Dale v. Rosenfeld*, 229 F.2d 855, 857 (2d Cir. 1956) (stating that the definition of an "underwriter" pursuant to 15 U.S.C. § 77b(11) "includes a best efforts underwriting as well as a firm commitment" (internal quotation marks omitted)). "In a 'best efforts' underwriting, the underwriter undertakes to sell the offering to the public but assumes no responsibility for any shares not sold." *SEC v. Coven*, 581 F.2d 1020, 1022 n.2 (2d Cir. 1978) (citing Jennings & Marsh, Securities Regulation 75 (3d ed. 1972)). In comparison, a "firm commitment" underwriting is where "the underwriter assumes the risk of loss on the unsold portion of the distribution." *Id.*

Federal courts recognize that underwriters have an obligation to investigate an issuer. *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 858 (9th Cir. 2001) (holding that the underwriter "had a duty to make an investigation that would provide him with a reasonable basis for a belief that the key representations in the statements provided to the investors were truthful and complete" (citing *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977) (recognizing that an underwriter has a duty to investigate an issuer, and that a reckless failure to do so may give rise to 10b-5 liability)). "An underwriter must investigate and disclose material facts that are known or 'reasonably ascertainable.'" *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 641 (D.C. Cir. 2008) (quoting *Municipal Securities Disclosure*, Exchange Act Release No. 26,100, 41 SEC Docket 1131

(Sept. 22, 1988), 1988 WL 999989, at *20). "[T]he securities laws impose a special duty on underwriters to perform a so-called 'due diligence' investigation of the issuer of any securities they underwrite." *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 587 (6th Cir. 2000).

A private placement offering, although exempt from the registration requirements under Section 5 of the Securities Act of 1933, is not exempt from the anti-fraud provisions of the federal securities laws. *See* FINRA Regulatory Notice 10-22, *Obligation of Broker-Dealers to Conduct Reasonable Investigations in Regulation D Offerings* (April 2010), *available at* http://www.finra.org/web/groups/industry/@ip/@reg/@notice/documents/notices/p121304.pdf.

> The [SEC] and federal courts have long held that a [broker-dealer] that recommends a security is under a duty to conduct a reasonable investigation concerning that security and the issuer's representations about it. This duty emanates from the [broker dealer's] "special relationship" to the customer, and from the fact that in recommending the security, the [broker-dealer] represents to the customer "that a reasonable investigation has been made and that [its] recommendation rests on the conclusions based on such investigation."

*Id.* at 3 (footnotes omitted) (quoting *Hanly v. SEC*, 415 F.2d 589, 597 (2d Cir. 1969)); *see also Bass*, 210 F.3d at 582 ("As underwriter of the private placement of securities . . . [the underwriter] was required to perform a 'due diligence' investigation of [the issuer]."); *id.* at 587 ("[B]ecause [the defendant] was the lead underwriter for the private placement of [the securities] . . . [the defendant] was under a statutorily imposed duty to perform due diligence on [the issuer]."); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005) (reversing the district court's dismissal of a complaint alleging securities fraud pursuant to Rule 10b-5 against defendants, who helped the issuer of the securities arrange a private placement of $25 million of its stock).

### 3.    *Application*

The court finds that Plaintiffs have alleged sufficient facts in the Complaint to support a finding at this stage of the litigation that Berthel Fisher acted as an underwriter for the TNP 2008 Participating Notes Program and owed Plaintiffs a duty to investigate and/or a duty to conduct due diligence as to TNP and/or the TNP 2008 Participating Notes Program.  Plaintiffs have alleged that Berthel Fisher "participate[d] or ha[d] a direct or indirect participation in . . . [the] undertaking" of "purchas[ing] from [TNP] with a view to, or offer[ed] or s[old] for [TNP] in connection with, the distribution of" the TNP 2008 Participating Notes Program notes.  15 U.S.C. § 77b(11).  Moreover, the court finds Defendants' argument that a private placement offering disposes of any potential liability for Berthel Fisher to conduct an investigation into the TNP 2008 Participating Notes Program offering and/or TNP as well as liability for the alleged misrepresentations in the Memorandum to be without merit.  *See* FINRA Regulatory Notice 10-22 (providing that a broker dealer in a private offering is still obligated to conduct a reasonable investigation).

Defendants rely on the Eighth Circuit Court of Appeals's analysis in *Ackerberg v. Johnson*, 892 F.2d 1328, 1335 (8th Cir. 1989) to support their argument that Berthel Fisher is not liable as an underwriter.  Reply at 2.  However, in *Ackerberg*, the Eighth Circuit found that the defendant was not an underwriter for registration purposes (i.e., pursuant to §§ 4(1) and (5) of the Securities Act of 1933, 15 U.S.C. §§ 77d(a)(1) and 77e) because no distribution occurred.  *Ackerberg*, 892 F.2d at 1335.  The Eighth Circuit noted in its discussion on whether the defendant was an underwriter that it was not addressing the plaintiff's "§ 12(2) 1933 Act claim against [the defendant] . . . .  The § 4(1) exemption is irrelevant to the [§ 12(2)] claim, which is based on misrepresentation." *Id.* at 1334 n.3.  In other words, the Eighth Circuit's holding that the defendant was not an underwriter pursuant to § 4(1) was irrelevant for purposes of the anti-fraud provisions of the Securities Act of 1933.  *Id.*  Furthermore, as discussed above, the anti-fraud provisions apply to

securities transactions that do not involve a public offering.  *See, e.g.*, *Bass*, 210 F.3d at 582.

In addition, the court is not persuaded by the authority that Defendants rely on to support their claim that, even if Berthel Fisher was an underwriter, Defendants owed no duty to Plaintiffs.  *See* Brief in Support of the Motion at 19 n.3 (citing *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 571-73 (S.D. Tex. 2011) (finding that a defendant bank was not liable for securities fraud, in part, because it owed the plaintiffs no duty to disclose, where the defendant was not an underwriter and the plaintiffs "[did] not even plead that they saw or read" an analyst report authored by the defendant, "[n]or did one of [the defendant's] analysts address, no less recommend," the securities at issue, and because the plaintiffs did not allege that the defendant made or participated in the preparation of the allegedly misleading offering documents)).  Accordingly, the court is satisfied that, for purposes of the Motion seeking dismissal under Rule 12(b)(6), Berthel Fisher acted as an underwriter for the TNP 2008 Participating Notes Program and owed Plaintiffs a duty to investigate and/or a duty to conduct due diligence as to TNP and/or the TNP 2008 Participating Notes Program.  In light of this finding, the court finds it unnecessary to address whether Berthel Fisher owed any duties to Plaintiffs as third-party beneficiaries or pursuant to the shingle theory.  However, the court notes that Plaintiffs' additional arguments on these grounds bolster the court's finding that dismissal is not warranted because Plaintiffs sufficiently alleged that Berthel Fisher owed Plaintiffs a duty to investigate and/or to conduct due diligence as to TNP and/or the TNP 2008 Participating Notes Program.

### B.  Is Berthel Fisher the "Maker" of the Alleged Misrepresentations?

In the Motion, Defendants argue that the court should dismiss Plaintiffs' claims in

Counts I, II, III, IV, VII, VIII and IX[4] of the Complaint because Defendants are not liable for the alleged misrepresentations in the Memorandum because, "[a]s a matter of law, all of the alleged misrepresentations contained in the [Memorandum] are attributed to TNP and the [TNP 2008 Participating Notes Program], and not to Defendants." Motion at 17. According to Defendants, such liability falls solely on TNP and the TNP 2008 Participating Notes Program. Defendants further argue that the court should rely on the United States Supreme Court's analysis in *Janus Capital Grp., Inc. v. First Derivative Traders*, __ U.S. __, 131 S. Ct. 2296 (2011). Defendants recognize that, in *Janus*, the Supreme Court considered a claim pursuant to federal securities laws and regulations, but contend that "[t]he federal securities laws are materially similar" to California Corporations Code sections 25401 and 25400 and Iowa Code sections 502.501 and 502.501A and, accordingly, the court should be persuaded by the Supreme Court's analysis in *Janus*. Motion at 16. Plaintiffs do not specifically address this argument. Rather, Plaintiffs assert that Defendants are liable pursuant to alternative legal theories that impose a duty on Defendants to disclose and to perform due diligence.

As a preliminary matter, the court agrees with Defendants' assertion that federal cases construing federal securities laws are persuasive authority when interpreting California and Iowa securities laws. *See Viterbi v. Wasserman*, 123 Cal. Rptr. 3d 231, 239 (Cal. Ct. App. 2011) ("[F]ederal cases construing federal securities laws are persuasive authority when interpreting [California] state securities law."). Furthermore, California courts have recognized that California Corporations Code sections 25401 and 25504 "are modeled after section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77L *et seq.*)." *Id.*; *see also Moreland v. Dep't of Corps.*, 239 Cal. Rptr. 558, 561 (Cal. Ct. App.

_____

[4] Accordingly, Defendants assert that this defense applies to all of Plaintiffs' claims pursuant to the securities laws as well as Plaintiffs' fraudulent inducement and negligent misrepresentation claims. The court finds it appropriate to address this defense before addressing those specific claims, and will refer back to this section, *infra*, as needed.

1987) ("The California Corporate Securities Law was patterned after the federal Securities Act of 1933.").

Similarly, Iowa courts look to federal courts' interpretation of federal securities laws for guidance in interpreting Iowa securities laws. *See State ex rel. Miller v. Pace*, 677 N.W.2d 761, 767 n.2 (Iowa 2004) ("Because [Iowa's] securities law is somewhat patterned after federal securities law, we look to federal decisions for guidance in interpreting our state statute."); *State ex rel. Goettsch v. Diacide Distribs., Inc.*, 561 N.W.2d 369, 372 (Iowa 1997) ("[Iowa's] securities statute is modeled somewhat after the Securities Exchange Act of 1934. Therefore, cases interpreting the 1934 Securities Exchange Act are persuasive." (citation omitted)). This reliance is somewhat tempered "by the differing purposes of federal and state securities laws." *State ex rel. Miller*, 677 N.W.2d at 767 n.2. "'The suppression of fraudulent practices and the protection of the public from their own gullibility are commonly accepted as the primary purposes of Blue Sky Laws.'" *Id.* (quoting *Lolkus v. Vander Wilt*, 141 N.W.2d 600, 603 (Iowa 1966)); *see also Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 901 (Iowa 1980) ("The general purpose of [Iowa's securities laws] is to protect the public from deceit perpetrated in the sale of securities . . . [and] should be liberally construed to effectuate their purpose."). However, the federal securities laws "have the 'broader purpose of protecting the integrity of the increasingly nationalized [securities] market.'" *State ex rel. Miller*, 677 N.W.2d at 767 n.2 (alteration in original) (quoting *King v. Pope*, 91 S.W.3d 314, 320 (Tenn. 2002)). In light of the foregoing, the court will consider other federal courts' application of the federal securities laws in construing the California and Iowa securities laws in the instant case.

In *Janus*, the plaintiffs, a class of stockholders in Janus Capital Group, Inc. ("JCG"), sued JCG and its wholly owned investment advisor subsidiary, Janus Capital

Management LLC ("JCM"), pursuant to SEC Rule 10b-5[5] for alleged misstatements in a prospectus that Janus Investment Fund, a separate entity owned by mutual fund investors, issued. *Janus*, 131 S. Ct. at 2299. The issue in *Janus* was whether JCM "made" the statements in the prospectus, rendering it liable under Rule 10b-5. *Id.* at 2301. The Supreme Court reasoned that, under Rule 10b-5, "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Id.* at 2303. Although the Supreme Court recognized that JCM may have helped draft the prospectus, it held that JCM was not the "maker" of the statements because the prospectus was not attributed to JCM and JCM's "assistance" in drafting the prospectus was "subject to the ultimate control of Janus Investment Fund." *Id.* at 2305. Rather, Janus Investment Fund filed the prospectus and ultimately controlled the content of the prospectus and was therefore liable for any misstatements therein. *Id.*

In the Complaint, Plaintiffs assert that "Defendants participated in the preparation of the [Memorandum]." Complaint ¶ 64. Plaintiffs do not assert, in the Complaint or in their briefs, that Defendants had the ultimate authority over the content in the Memorandum. Moreover, the Memorandum states that TNP "shall have full, exclusive and complete discretion to manage and control the business and affairs of the [TNP 2008 Participating Notes Program]." Memorandum at 90.

The court finds that, to the extent that the laws under which Plaintiffs assert their

---

[5] Rule 10b-5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). *Cf.* Cal. Corp. Code § 25400(d) (making it unlawful for "a broker-dealer or other person selling or offering for sale" a security "to make . . . any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"). Rule 10b-5, promulgated under §10(b) the Securities Exchange Act of 1934, is one of the primary ways the SEC targets securities fraud.

claims require that Defendants *made* the misrepresentations in the Memorandum, the Supreme Court's analysis in *Janus* is persuasive. Defendants' alleged "participation in the preparation," Complaint ¶ 64, of the Memorandum is not sufficient to support an allegation that Defendants *made* the misrepresentations in the Memorandum. *See Janus*, 131 S. Ct. at 2303 ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."). However, the court finds this does not, on its own, necessarily support dismissal of Counts I, II, III, IV, VII, VIII and IX. Rather, the court will bear this analysis in mind as it addresses each claim and, to the extent that a claim *requires* a finding that Defendants were the makers of the misrepresentations in the Memorandum, the court will dismiss that claim.

### C. The Bespeaks Caution Doctrine

#### 1. Parties' arguments

Defendants argue that the court should dismiss each of Plaintiffs' claims alleging securities law violations in Counts I, II, VII and VIII pursuant to the "bespeaks caution doctrine."[6] Brief in Support of the Motion at 21. According to Defendants, the Memorandum "is replete with disclosures about the issuer ([the TNP 2008 Participating Notes Program]) and its guarantor (TNP). . . . Those disclosures rendered the misrepresentations alleged in the [Complaint] immaterial as a matter of law." *Id.* at 21-22. The disclosures that Defendants assert render any alleged misrepresentations or omissions immaterial

addressed risks attendant to the investment, the guarantor, and

---

[6] Because Defendants argue that this defense applies to each of Plaintiffs' claims alleging a violation of the securities laws, the court shall address it before addressing those claims specifically. Plaintiffs claims under the securities laws are pursuant to both California and Iowa law, however, because it appears that the bespeaks caution doctrine applies in the same way to claims brought under either California or Iowa securities laws, and the parties do not contend otherwise, the court will analyze the bespeaks caution doctrine generally.

disclosed TNP's sole and absolute discretion concerning the operation of the business. Those disclosures indicated that the financial statements included with the [Memorandum] were not verified by an independent third party. Those disclosures advised, and all investors agreed as a condition of their participation, to rely upon their own examination (not [Berthel Fisher's]) in deciding whether to invest in the [TNP 2008 Participating Notes Program].

*Id.* (emphasis omitted). It then follows, according to Defendants, that since materiality is an essential element of Plaintiffs' securities law claims, the court should dismiss them.

Defendants address the disclosures and cautionary statements in the Memorandum more specifically in the Brief in Support of the Motion at 12-14. Defendants cite the following cautionary language and risk factors in the Memorandum: (1) "[F]orward-looking statements [in the Memorandum] are subject to risks, uncertainties and assumptions about the [TNP 2008 Participating Notes Program's] operations and investments." Memorandum at 17; (2) "An investment in the Notes is speculative and is suitable only for persons who are able to evaluate the risks of the investment . . . [and] bear the risk of and withstand the total loss of their investment." *Id.* at 18; (3) "There is no assurance that the cash flow, profits or capital of the [TNP 2008 Participating Notes Program] will be sufficient to pay all interest and repay principal on the Notes in a timely manner or at all or that the [TNP 2008 Participating Notes Program] will be profitable." *Id.*; (4) "If TNP is required to perform on [a guarantee related to an affiliate program] or future guarantees on other debt obligations or otherwise experiences an adverse financial event, it is possible that TNP may not have sufficient funds or resources to manage TNP or perform under its guaranty of the Notes." *Id.*; (5) The Memorandum states that the Balance Sheet is "unaudited." *Id.*; (6) Neither TNP nor the TNP 2008 Participating Notes Program are "obligated to refrain from engaging in activities or transactions that involve a conflict of interest, which favor the interests of [TNP] over the interests of the Noteholders or which are otherwise adverse to Noteholders, unless such activities or

transactions are specifically prohibited." *Id.* at 20; and (7) The TNP 2008 Participating Notes Program has the power to "fund loans to or equity investments in [TNP] or its Affiliates." *Id.* at 88.

In the Resistance, Plaintiffs argue that the bespeaks caution doctrine does not apply to the alleged securities violations because the misrepresentations and material omissions in the Memorandum "pertain[] to contemporary facts and not forward-looking statements, and the supposedly cautionary statements and risk disclosures were too general, did not adequately disclose the risks, and did not directly address the substance of the misrepresentations alleged in the" Complaint. Resistance at 17. Specifically, according to Plaintiffs, "the proffered guarantee was worthless when given[ because] TNP's default had already occurred, TNP's financials were already deteriorating, and TNP's financial statement attached to the [Memorandum] was already outdated and misleading." *Id.* at 17-18 (footnotes omitted). Thus, Plaintiffs contend that the court should deny the Motion to the extent that it requests that the court dismiss their claims brought under the securities laws pursuant to the bespeaks caution doctrine.

### 2. *Applicable law*[7]

The Eighth Circuit has described the bespeaks caution doctrine as follows:

> [W]hen an offering document's forecasts, opinions or

---

[7] In discussing the relevant law on the bespeaks caution doctrine, the parties cite cases applying federal and state securities laws within the 8th and 9th Circuit Courts of Appeals interchangeably. It appears to the court, and the parties do not dispute, that the relevant law is substantially the same. *See Sitrick v. Citigroup Global Mkts., Inc.*, No. CV 05-3731 AHM (PJWx), 2009 WL 1298148, at *8 n.18 (C.D. Cal. April 30, 2009) (quoting *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004), and applying the bespeaks caution doctrine to allegations pursuant to California Corporations Code sections 25400 and 25401, noting that "[t]he [b]espeaks [c]aution doctrine is not restricted to federal securities laws"). The court is unaware of any cases, and the parties cite none, applying the bespeaks caution doctrine to a claim pursuant to Iowa Code sections 502.501 or 502.501A.

> projections are accompanied by meaningful cautionary
> statements, the forward-looking statements will not form the
> basis for a securities fraud claim if those statements did not
> affect the "total mix" of information the document provided
> investors. In other words, cautionary language, if sufficient,
> renders the alleged omissions or misrepresentations immaterial
> as a matter of law.

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 548 (8th Cir. 1997) (quoting *In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 371 (3d Cir. 1993)) (applying the bespeaks caution doctrine to alleged violations of federal securities laws). "The cautionary language must 'relate directly to that which plaintiffs claim to have been misled.'" *Id.* (quoting *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 489 (3d Cir. 1994)).

Similarly, the Ninth Circuit Court of Appeals has stated that "'[t]he bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law (typically in a motion to dismiss . . . ) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud.'" *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994)) (addressing a plaintiff's claims pursuant to sections 25400 and 25401). "[T]he 'bespeaks caution' doctrine has developed to address situations in which optimistic projections are coupled with cautionary language—in particular, relevant specific facts or assumptions—affecting the reasonableness of reliance on and the materiality of those projections." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1414 (quoting *Rubinstein v. Collins*, 20 F.3d 150, 167 (5th Cir. 1994)). "'Blanket warnings that securities involve a high degree of risk [are] insufficient to ward against a federal securities fraud claim.'" *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (alteration in original) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1414).

"A dismissal of a securities fraud complaint under Rule 12(b)(6) should be granted under the bespeaks caution doctrine only where 'the documents containing defendants' challenged statements include *enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading.'" *Parnes*, 122 F.3d at 548 (quoting *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995)); *see also Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("[N]ot every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow."); *Livid Holdings Ltd.*, 416 F.3d at 947 ("Dismissal on the pleadings under the bespeaks caution doctrine . . . requires a stringent showing . . . ."); *Fecht*, 70 F.3d at 1082 ("Inclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading.").

### 3. *Application*

As noted above, "[a] dismissal of a securities fraud complaint under Rule 12(b)(6) should be granted under the bespeaks caution doctrine only where 'the documents containing defendants' challenged statements include *enough* cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading.'" *Parnes*, 122 F.3d at 548 (quoting *Fecht*, 70 F.3d at 1082). The court finds that, at the very least, "reasonable minds" *could* disagree as to whether the "total mix" of information in the Memorandum is misleading. *But cf. Parnes*, 122 F.3d at 548 (affirming the district court's dismissal of the plaintiffs' securities fraud claims pursuant to the bespeaks caution doctrine where the defendant company's cautionary statements, which stated that, "[i]n the future, the [c]ompany may be required to collect sales and use taxes or to pay state income tax and franchise taxes in states other than South Dakota" directly addressed the substance of the plaintiffs' allegation that the company faced potential tax

liability in states other than South Dakota); *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992) (affirming the district court's grant of summary judgment in favor of the defendants where the offering documents contained "specific disclaimers" and the alleged misrepresentations were "openly hypothetical [in] nature"). Unlike in *Parnes*, the cautionary language that Defendants point to does not *directly* and *specifically* address the substance of each of the misrepresentations and omissions that Plaintiffs allege. Unlike in *McGonigle*, the alleged misrepresentations and omissions are not hypothetical in nature. Furthermore, the alleged misrepresentations that Plaintiffs point to contain more than merely "optimistic projections" that the bespeaks caution doctrine was developed to address. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1414 (quoting *Rubinstein*, 20 F.3d at 167); *see, e.g.*, Complaint ¶¶ 72, 75 (alleging that the Memorandum failed to disclose "TNP's rapidly deteriorating financial situation" and "that the TNP Balance Sheet did not accurately reflect TNP's finances").

In the Complaint, Plaintiffs allege the existence of numerous material misstatements and omissions in the Memorandum. *See* Complaint ¶¶66-82.[8] The language from the Memorandum that the Defendants cite is broad and is not specific enough to render the alleged misrepresentation immaterial at this point in the litigation. Furthermore, when considered in its entirety, at least some of the language that Defendants rely on conflicts with other portions of the Memorandum. *Compare* Memorandum at 12 (asserting that the TNP 2008 Participating Notes Program "will use the net proceeds from the Offering primarily to fund or invest, directly or indirectly, in real estate and real-estate related debt"), *with id.* at 88 (providing that the TNP 2008 Participating Notes Program has the power to "fund loans to or equity investments in [TNP] or its Affiliates"). Thus, a factual

---

[8] The court notes that "[t]he bespeaks caution doctrine is, as an analytical matter, equally applicable to allegations of both affirmative misrepresentations and omissions." *In re Donald J. Trump Casino Sec. Litigation*, 7 F.3d at 371.

question exists as to whether the "total mix" of the language in the Memorandum is materially misleading. *See Parnes*, 122 F.3d at 548 (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d at 357). Moreover, Plaintiffs allege that "the proffered guarantee was worthless when given, TNP's default had already occurred, TNP's financials were already deteriorating, and TNP's financial statement attached to the [Memorandum] was already outdated and misleading." Resistance at 17-18 (footnotes omitted). Therefore, Plaintiffs assert that some of the alleged misrepresentations were false when made. *See In re First Am. Ctr. Sec. Litig.*, 807 F. Supp. 326, 333 (S.D.N.Y. 1992) (holding that the disclaimers in a private placement Memorandum that bespeak caution "do not necessarily shield a defendant from liability and are insufficient to sustain a motion to dismiss, if plaintiffs allege particular facts demonstrating the defendant knew that such statements were false at the time they were made").

After reviewing the entire record, including the Memorandum, the court finds that the disclosures and cautionary language contained therein are not sufficient to render the alleged misrepresentations and omissions immaterial as a matter of law. *See Provenz*, 102 F.3d at 1493 ("'Blanket warnings that securities involve a high degree of risk [are] insufficient to ward against a federal securities fraud claim.'" (alteration in original) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1414)); *Fecht*, 70 F.3d at 1082 ("Inclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading."). Furthermore, the alleged misstatements, including the allegedly inaccurate Balance Sheet, the failure to disclose TNP's deteriorating financial conditions and the failure to disclose that proceeds would be used to pay distributions to earlier investors in the TNP 2008 Participating Notes Program, rather than for real estate investments, are not the "optimistic projections" that the bespeaks caution doctrine seeks to address. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d at 1414 (quoting *Rubinstein*, 20 F.3d at 167). Accordingly, the Motion is denied

to the extent that it seeks dismissal of Plaintiffs' claims in Counts I, II, VII and VIII pursuant to the bespeaks caution doctrine.

### D.  Count I

In Count I of the Complaint, Plaintiffs claim that Defendants violated California Corporations Code section 25401, which states:

> It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
>
> (a)  Employ a devise, scheme, or artifice to defraud.
>
> (b)  Make an untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.
>
> (c)  Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Cal. Corp. Code § 25401.  Plaintiffs contend that Defendants violated this provision because they "offered for sale and sold TNP 2008 Notes to Plaintiff[s] . . . through numerous untrue statements of material fact[] as well as omissions of material fact[] in the [Memorandum] regarding the use of investment proceeds and TNP's history and financial condition."  Complaint ¶ 122.  Alternatively, and to the extent that Defendants are not sellers within the scope of California Corporations Code section 25401, Plaintiffs contend that Defendants violated California Corporations Code section 25504, which provides:

> Every person who directly or indirectly controls a person liable under Section 25501[9] or 25503, every partner in a firm

---

[9] Section 25501 provides that "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him . . .

(continued...)

to the extent that it seeks dismissal of Plaintiffs' claims in Counts I, II, VII and VIII pursuant to the bespeaks caution doctrine.

### D.  Count I

In Count I of the Complaint, Plaintiffs claim that Defendants violated California Corporations Code section 25401, which states:

> It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
>
> (a)  Employ a devise, scheme, or artifice to defraud.
>
> (b)  Make an untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.
>
> (c)  Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Cal. Corp. Code § 25401.  Plaintiffs contend that Defendants violated this provision because they "offered for sale and sold TNP 2008 Notes to Plaintiff[s] . . . through numerous untrue statements of material fact[] as well as omissions of material fact[] in the [Memorandum] regarding the use of investment proceeds and TNP's history and financial condition."  Complaint ¶ 122.  Alternatively, and to the extent that Defendants are not sellers within the scope of California Corporations Code section 25401, Plaintiffs contend that Defendants violated California Corporations Code section 25504, which provides:

> Every person who directly or indirectly controls a person liable under Section 25501[9] or 25503, every partner in a firm

---

[9] Section 25501 provides that "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him . . .

navigation(continued...)

so liable, *every principal executive officer or director of a corporation so liable, . . . every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation*, are also liable jointly and severally with and to the same extent as such person, unless the other person who is liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code § 25504 (emphasis added). Plaintiffs assert that Defendants violated this provision because they "knowingly and materially aided in the acts or transactions constituting violations of [section] 25401." Complaint ¶ 126.

In the Motion, Defendants argue that the court should dismiss Count I because Defendants are not sellers within the meaning of California Corporations Code section 25401, Defendants are not liable for any alleged misstatements in the Memorandum, Defendants are not the makers of the misrepresentations at issue, Defendants did not have a duty to disclose information to Plaintiffs or investigate, there is no privity between Plaintiffs and Defendants and Defendants did not materially aid in any securities law violation.[10]

---

[9](…continued)
unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know . . . of the truth or omission." Cal. Corp. Code § 25501.

[10] Because the court ultimately concludes that Plaintiffs' claim in Count I can go forward pursuant to section 25504, for reasons more fully explained herein, Defendants' arguments that Defendants are not the "makers" of the misrepresentations at issue and that Defendants did not have a duty to disclose information to Plaintiffs are inapplicable to this claim, because section 25504 imposes liability on "every broker-dealer or agent who materially aids in the act or transaction constituting [a] violation" of section 25501. Cal. Corp. Code § 25504. Plaintiffs do not have to allege that Defendants had a duty to disclose with respect to a claim alleging that Defendants *materially aided* in a violation of

(continued…)

## 1. Are Defendants sellers under California Corporations Code section 25401?

### a. Parties' arguments

In the Motion, Defendants contend that only *sellers* are liable pursuant to California Corporations Code section 25401 and that strict privity is required between a plaintiff-purchaser and defendant-seller for a seller to be liable under section 25401. Defendants further contend that they are not sellers because the Memorandum states that TNP is the issuer of the TNP 2008 Notes and investors sent subscription agreements directly to the TNP 2008 Participating Notes Program, which had the right to reject any investor application. Furthermore, Defendants contend that, even if Defendants were sellers, they "did not sell any notes to Hanson[,] Hanson was not [Berthel Fisher's] customer[,] . . . there is no privity . . . and [section] 25501 does not apply." Brief in Support of the Motion at 23. In the Resistance, Plaintiffs contend that there is no privity requirement to state a claim pursuant to California Corporations Code section 25400 and 25500.[11] Notably, Plaintiffs do not refute Defendants' argument that Defendants did not sell any notes to Plaintiffs.

### b. Analysis

As provided above, section 25401 states that

> [i]t is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to . . . [m]ake an untrue statement of material fact or omit to state a

---

[10](...continued)
the securities laws. Accordingly, the court finds it unnecessary to discuss these arguments pursuant to Count I.

[11] In their Resistance, Plaintiffs do not claim that there is no privity requirement under section 25401, the provision under which Plaintiffs assert primary liability in their claim in Count I. Furthermore, although the case law that Plaintiffs rely on provides that there is no privity requirement under section 25400, it does not suggest that privity is not required under section 25401.

material fact necessary to make the statements made, in light
of the circumstances under which they were made, not
misleading.

Cal. Corp. Code § 25401.

The enforcement provision for this section is found in California Corporations Code section 25501, which provides that "[a]ny person who violates [s]ection 25401 shall be liable *to the person who purchases a security from him* or sells a security to him, who may sue either for rescission or for damages." Cal. Corp. Code § 25501 (emphasis added). "Section 25501 on its face requires privity between the plaintiff and the defendant." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 221 (Cal. Ct. App. 2007) (holding that the defendant broker-dealer was not liable for a violation of section 25401 because the investors did not purchase their securities from the broker-dealer). The Ninth Circuit has also held that liability under section 25401 requires strict privity, stating that "liability [is] limited to actual sellers." *SEC v. Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982); *see also Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061 TEH, 2005 WL 2045807, at *9 (N.D. Cal. Aug 25, 2005) ("Unlike section[] 25401 . . . sections 25400 and 25500 do not require direct privity—i.e., a sale from defendant to plaintiff.").

The court finds the California Court of Appeals's analysis of section 25401 in *Apollo Capital Fund, LLC*, persuasive. Furthermore, a plain reading of section 25501, the enforcement provision associated with 25401, supports a finding that privity is required between Plaintiffs and Berthel Fisher to state a claim pursuant to section 25401. In the Resistance, Plaintiffs do not refute Defendants' assertion that Berthel Fisher did not sell any TNP 2008 Participating Notes Program notes to Plaintiffs.[12] Accordingly, it appears

---

[12] The court is not making a finding that Defendants did not sell or offer to sell the notes to any investor. The court acknowledges that in the Complaint, Plaintiffs assert that

(continued...)

that Plaintiffs have elected to pursue their claim in Count I pursuant to section 25504 rather than section 25401. The court shall grant the Motion to the extent that it requests the court to dismiss Plaintiffs' claim in Count I pursuant to 25401. However, this does not end the inquiry into Plaintiffs' claim in Count I, as Plaintiffs argue that, in the alternative, and "[t]o the extent that Defendants are deemed not to be sellers of the TNP 2008 [Participating Notes Program] notes, Defendants are nonetheless liable for the misrepresentations and omissions made in connection with those securities pursuant to California Corporations Code [section] 25504." Complaint ¶ 126.

## 2. Are Defendants Liable Under California Corporations Code Section 25504?

### a. Privity

#### i. Parties' arguments

In the Motion, Defendants assert that the court should dismiss Plaintiffs' alternative argument in Count I, which seeks to impose liability on Defendants pursuant to section 25504, because section 22504 derives its liability from section 25501, which derives its liability from section 25401 and, accordingly, privity is still required to state a claim pursuant to section 25504.[13] Thus, Defendants assert that "[b]ecause [Berthel Fisher] did not sell any notes to Hanson (Hanson was not [Bertherl Fisher's] customer), [section] 25504 does not apply." Brief in Support of the Motion at 24.

In the Resistance, Plaintiffs assert that privity is not a requirement under section

---

[12](…continued)
"Berthel Fisher, directly and/or through its agents, approached the TNP 2008 Participating Notes Program investors, including Plaintiff[s], distributed the TNP 2008 [Participating Notes Program Memorandum] to them, and offered and sold them securities issued by the TNP 2008 [Participating Notes Program]." Complaint ¶ 92.

[13] As discussed above, privity is required to state a claim pursuant to section 25401, as made clear by section 25501, the enforcement provision for section 25401. *See Apollo Capital Fund, LLC*, 70 Cal. Rptr. 3d at 221 ("Section 25501 on its face requires privity between the plaintiff and the defendant.").

25504. Rather, Plaintiffs contend that, to state a claim under section 25504, Plaintiffs must show that "Defendants (1) materially aided in the TNP 2008 [Participating Notes Program] offering's fraud; and (2) had knowledge of such false or misleading representations or knew facts giving them reasonable grounds to know the statements were false or misleading." Resistance at 7.

## ii. Applicable law

As discussed above, section 25504 provides that "every employee of a person so liable who materially aids in the act or transaction constituting the violation [of section 25501], and every broker-dealer or agent who materially aids in the act or transaction constituting the violation [of section 25501]" is jointly and severally liable with the person liable under section 25501. Cal. Corp. Code § 25504. Section 25504 "imposes 'control person' liability or secondary liability on those who assist others in primary violations under the California Securities Act." *Jackson v. Fischer*, C 11-2753 PJH, 2013 WL 6732872, at *14 (N.D. Cal. Dec. 20, 2013). Stated differently, section 25504 "imposes liability on a broker-dealer or agent who materially aids in the act or transaction." *Apollo Capital Fund, LLC*, 70 Cal. Rptr. 3d at 222; *see also id.* (contrasting section 25504 with other securities statutes, including section 25401, that restrict liability to sellers and noting that section 25504, "by contrast, defines liability of various participants"). "'[N]o occasion or justification exists for a court to impose liability based on [a participation] theory on anyone other than the actual vendor of that security under . . . [section] 25401 and 25501 . . . because [section] 25504 . . . precisely set[s] forth the extent to which persons other than the vendor may also be liable.'" *Id.* at 253-54 (second alteration in original) (quoting 1 Marsh & Volk, Practice Under the California Securities Laws (rev. ed. 2006) § 14.03, at 14-23). Accordingly, although privity is required to state a claim pursuant to section 25401, privity is not required to state a claim pursuant to section 25504. Rather, section 25504 imposes liability on participants who materially aid in

another party's violation of section 25401. *See id.*

In support of their assertion that strict privity is required to assert a claim under section 25504, Defendants cite *In re Diasonics Securities Litigation*, 599 F. Supp. 447 (N.D. Cal. 1984). In that case, the plaintiffs alleged securities law violations against the issuer of the securities, certain officers and directors and the underwriters, who participated in the issuance of an allegedly materially misleading registration statement and prospectus. *Id.* at 450. That court held that the plaintiffs failed to allege a claim pursuant to section 25401 because they did not show privity with any of the defendants, including the issuer, and therefore also failed to allege a claim under section 25504, stating that "[s]ection 25504, by its terms, applies to violations of section 25501. Hence, strict privity is still required." *Id.* at 459.

In turn, Plaintiffs contend that privity is not required under section 25504 and that Defendants reliance on and analysis of *In re Diasonics Securities Litigation* is improper. Rather, Plaintiffs assert that the court should rely on the California Court of Appeals's analysis in *Moss v. Kroner*, 129 Cal. Rptr. 3d 220 (Cal. Ct. App. 2011). In *Moss*, the California Court of Appeals observed that "[n]umerous courts have recognized that strict privity is required only for claims of primary liability under section 25401 . . . and not for secondary liability suits alleging joint and several liability for a violation of 25401." *Id.* at 228. That court went on to state that

> as long as primary liability is stated or established with the privity required by section 25501 and a violation of section 25401, secondary liability may also exist under section[] 25504 . . . for others who participated in the violation in the specific roles listed in those sections without any further need for privity between these secondarily liable actors and the plaintiff.

*Id.* at 229; *see also Apollo Capital Fund, LLC*, 70 Cal. Rptr. 3d at 223 (holding that, although the investor-plaintiff failed to allege a claim under section 25401 against the

broker-dealer-defendant, the plaintiff stated a claim under section 25504 against the broker-dealer when the plaintiff alleged that the broker-dealer materially aided the securities' issuer by serving as a broker-dealer for the offering and actively soliciting investors' purchases by means of false or misleading statements).

*iii.*     ***Application***

The court finds that privity between Berthel Fisher and Plaintiffs is not required for Plaintiffs to state a claim pursuant to section 25504. So long as Plaintiffs alleged: (1) strict privity between Plaintiffs and TNP or the TNP 2008 Participating Notes Program; and (2) that TNP or the TNP 2008 Participating Notes Program violated section 25401, they can state a cause of action against Berthel Fisher without alleging privity between Berthel Fisher and Plaintiffs if they alleged that Berthel Fisher "participated in the violation in the specific roles listed in [section 25504] without any further need for privity" between Plaintiffs and Berthel Fisher. *See Moss*, 129 Cal. Rptr. 3d at 229.

Furthermore, the court is not persuaded by the United States District Court for the Northern District of California's analysis in *In re Diasonics Securities Litigation* because the facts of that case are distinguishable from those in the instant matter. First, as Plaintiffs point out, there is more recent case law that makes it clear that privity is *not* required to show secondary liability against a broker-dealer pursuant to section 25504. *See, e.g., Moss*, 129 Cal. Rptr. 3d at 229. Second, in *In re Diasonics Securities Litigation*, the plaintiffs failed to allege a primary violation of 25401 because they failed to allege privity between the plaintiffs and the issuer. It was because of *this* lack of privity that the United States District Court for the Northern District of California found that the plaintiffs' claim pursuant to section 25504 failed. Such is not the case here. The court finds that Plaintiffs have satisfied the plausibility standard required to survive a Rule 12(b)(6) motion with respect to this portion of their claim in Count I—primary liability as to TNP and/or the TNP 2008 Participating Notes Program, the issuer of the notes that

Plaintiffs purchased,[14] pursuant to section 25401. The court finds that the allegations as to TNP and/or the TNP 2008 Participating Notes Program's primary liability are sufficient to allege a violation of section 25401, which states that

> [i]t is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to . . . [e]mploy a devise, scheme, or artifice to defraud . . . [,] [m]ake an untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading . . . [,] [or] [e]ngage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Cal. Corp. Code § 25401. There is no dispute that the TNP 2008 Participating Notes Program issued the securities and, thus, the court finds that the privity requirement with respect to this claim is satisfied. The allegations in the Complaint of material misrepresentations and omissions in the Memorandum, which was used to promote the TNP 2008 Participating Notes Program, that the TNP 2008 Participating Notes Program commingled investors' funds and operated in a Ponzi-scheme-like fashion, are sufficient to allege primary liability against TNP and/or the TNP 2008 Participating Notes Program in violation of section 25401.[15] However, this does not end the inquiry because Plaintiffs

---

[14] Defendants acknowledge that the TNP 2008 Participating Notes Program was the issuer of the notes at issue. Brief in Support of Motion at 13 ("The [TNP 2008 Participating Notes Program] (not [Berthel Fisher]) was the 'issuer' of the notes." (quoting Memorandum at 4)).

[15] To the extent that Defendants contend that the Complaint fails to allege that TNP and/or the TNP 2008 Participating Notes Program violated section 25401, the court finds such argument unavailing. The plain language of section 25401 imposes liability on a seller of securities, such as TNP and/or the TNP 2008 Participating Notes Program, who "[m]ake[s] an untrue statement of material fact or omit[s] . . . a material fact necessary to make the statements made, in light of the circumstances under which they were made, not

(continued...)

must also allege that Berthel Fisher "materially aided" in TNP and/or the TNP 2008 Participating Notes Program's primary violation under section 25501 for their claim in Count I to go forward pursuant to section 25504. *See* Cal. Corp. Code § 25504.

### b. *Materially aid*

#### i. *Parties' arguments*

In the Reply, Defendants further contend that the court should dismiss Plaintiffs' claim pursuant to section 25504 in Count I because the Complaint does not sufficiently allege that Berthel Fisher materially aided in the violation. Defendants point out that Plaintiffs "must sufficiently allege that [Berthel Fisher] 'materially aided, not simply in the transaction, but in the violation.'" Reply at 6 (quoting *Apollo Capital Fund, LLC*, 70 Cal. Rptr. 3d at 223). Defendants argue that Plaintiffs failed to allege material assistance because the Complaint does not allege that the Memorandum "contains an actionable false statement or omission" and because Berthel Fisher did not use the Memorandum to sell securities to Plaintiffs. Reply at 6-7.

Plaintiffs contend that they sufficiently alleged that Defendants materially aided in the violation because they allege that Defendants promoted the TNP 2008 Participating

---

[15](...continued)
misleading." Cal. Corp. Code § 25401. Defendants contend that Plaintiffs do not allege that the Memorandum contains an "objectively false statement" and that the Ninth Circuit's analysis in *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002) supports their assertion that the Memorandum must contain an "objectively false" statement. Reply at 6. However, in *Brody*, in applying § 10(b) of the Securities and Exchange Act of 1984 and Securities and Exchange Commission ("SEC") Rule 10b-5, 16 C.F.R. § 240.10b-5, the Ninth Circuit stated that the securities laws "prohibit *only* misleading and untrue statements, not statements that are incomplete." *Brody*, 280 F.3d at 1006. For an omission to be actionable, it "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* Material misrepresentations and omissions such as those contemplated by the Ninth Circuit in *Brody* are precisely the actionable conduct that Plaintiffs allege in the Complaint.

Notes Program and solicited investors as the managing broker-dealer of the TNP 2008 Participating Notes Program, "contributed to the Memorandum, organized the selling group of broker-dealers for the offering, oversaw the offering, compensated other broker-dealers for recruiting investors to [the] TNP 2008 [Participating Notes Program], conducted due diligence as to [the] TNP 2008 [Participating Notes Program], and exercised control over the bank account from which the investor funds were transferred" to the TNP 2008 Participating Notes Program. Resistance at 8. In addition, Plaintiffs argue that the Complaint sufficiently alleges that Defendants knew or should have known of the alleged misrepresentations and omissions in the Memorandum "because of their role in preparing the [Memorandum], their positions as underwriter of the [TNP 2008 Participating Notes Program], and their role in promoting other TNP-sponsored programs." *Id.* at 8-9.

In the Sur Reply, Plaintiffs contend that Defendants materially aided in TNP and/or the TNP 2008 Participating Notes Program's primary violations related to the TNP 2008 Participating Notes Program offering because "they knew the [Memorandum] whose distribution they planned, oversaw, and executed was materially misleading." Sur Reply at 2. Plaintiffs further state that they "pled primary violations by TNP and the TNP 2008 [Participating Notes Program] by citing to numerous material misrepresentations and omissions in the [Memorandum]." *Id.*

## ii. *Applicable law*

To show that a defendant "materially aided" in the violation, a plaintiff must show that the defendant did more than play an active role in the offering. *Apollo Capital Fund, LLC*, 70 Cal. Rptr. 3d at 223-24. However, a plaintiff is not required to go so far as to show that the defendant "actual[ly] participat[ed] in drafting the false or misleading statements" by which the notes were sold. *Id.* at 224. Rather,

> [t]o plead that [a broker-dealer-defendant] materially aided [the issuer] in the latter's sales of the . . . notes by false or

42

misleading representations, the investor[-plaintiffs] were required to plead facts showing [the broker-dealer's] knowledge of the false or misleading nature of the representations in the offering documents (or that [the broker-dealer] knew facts giving it reasonable grounds to know the statements were false or misleading).

*Id.* In *Apollo Capital Fund, LLC*, the California Court of Appeals held that a broker-dealer was liable pursuant to section 25504 where the investor-plaintiffs showed that the issuer sold the securities by means of an untrue or misleading statement in the offering document. The court held that the broker-dealer materially aided in that violation because, although the broker-dealer did not actually draft the offering documents, the broker-dealer "had actual knowledge of the false or misleading nature of the representations in the offering documents" that it used to solicit purchases. *Id.*

Accordingly, in order to assert that a broker-dealer-defendant is liable under section 25504, the plaintiff must allege that the broker-dealer *knew* of the false or misleading representations in the offering documents and that the broker-dealer *materially aided* in the violation, which requires an allegation that the broker-dealer did more than play an active role in the offering, such as an allegation that the broker-dealer "solicited the purchase of the . . . notes with [materially misleading] offering documents" with knowledge that the documents were materially misleading. *Id.*

### iii. *Application*

The court finds that the Complaint sufficiently alleges that Berthel Fisher materially aided TNP and/or the TNP 2008 Participating Notes Program's violation under section 25401 and is liable pursuant to section 25504. The Complaint contains sufficient allegations that Berthel Fisher knew of the misleading statements and material omissions in the Memorandum. *See, e.g.*, Complaint ¶¶ 58-59. In addition, the Complaint sufficiently alleges that Berthel Fisher materially aided in TNP and/or the TNP 2008 Participating Notes Program's violations of section 25401. *See id.* ¶¶ 64-65 (alleging that

Defendants participated in the preparation of the Memorandum, which contained material misrepresentations and omissions); *id.* ¶¶ 83-91 (alleging that Defendants failed to conduct adequate due diligence for the TNP 2008 Participating Notes Program); ¶¶ 92-96 (alleging that Defendants offered and sold securities issued by the TNP 2008 Participating Notes Program to Plaintiffs and oversaw and managed the TNP 2008 Participating Notes Program). In addition, the Memorandum states that the role of the Broker-Dealer (Berthel Fisher) is to "recommend[] a purchase of the Notes." Memorandum at 47. Therefore, Plaintiffs have pled sufficient allegations to support their claim in Count I pursuant to section 25504.

### c.    Summary

In light of the foregoing, the court finds that Plaintiffs have sufficiently pled a claim against Defendants in Count I of the Complaint. As discussed above, it appears that Plaintiffs decided to forego their claim pursuant to section 25401 in the Resistance. Therefore, the court grants the Motion to the extent that it requests the court dismiss Plaintiffs' claim in Count I pursuant to section 25401. However, the court finds that Plaintiffs' alternative argument in Count I—that Defendants are liable pursuant to section 25504—was sufficiently pled in the Complaint because Plaintiffs alleged a primary violation pursuant to section 25501 against TNP and/or the TNP 2008 Participating Notes Program and that Defendants had knowledge of the alleged misrepresentations in the Memorandum and materially aided in the act or transaction constituting such violation. Furthermore, because there is no requirement in section 25504 that Defendants "made" the misleading statements, Defendants argument on that ground does not apply to this claim. Accordingly, the court shall deny the Motion to the extent that it requests that the court dismiss Plaintiffs' claim pursuant to section 25504 in Count I of the Complaint.

### E.   Count II

In Count II of the Complaint, Plaintiffs assert that Defendants violated California

Corporations Code section 25400, which states that it is unlawful for any person,

> [i]f such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security,[16] to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code § 25400(d).   California Corporations Code section 25500 is the enforcement provision for section 25400, and states that "[a]ny person who willfully[17] participates in any act or transaction in violation of [s]ection 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction."[18]   Cal. Corp. Code § 25500.   In the Complaint, Plaintiffs assert that Defendants violated section 25400 because they "made numerous untrue statements of

---

[16] The court notes that the parties do not dispute whether the TNP 2008 Participating Notes Program notes qualify as a security.  The definition of a security under California law includes "any note [or] stock."  Cal. Corp. Code § 25019.  It appears that the notes fall comfortably within this definition.

[17] Thus, section 25400 requires "intent to defraud through a knowingly false statement."  *Calif. Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 923 (Cal. Ct. App. 2001).

[18] The court notes that section 25500 does *not* require privity like section 25501 does.  Rather, section 25500 is more broad.  "'Under section 25501 the defendant is only liable to the person with whom he deals; whereas, under Section 25500 the defendant may be liable to any person trading in the market.'"  *Mirkin v. Wasserman*, 858 P.2d 568, 581 (Cal. 1993) (alterations omitted) (quoting 1 Marsh & Volk, Practice Under the California Securities Law (1993) §14.05[2][e], at 14-50).

45

material facts as well as omissions of material facts" in the Memorandum as to the TNP 2008 Participating Notes Program's use of investment proceeds and TNP's financial condition, "and adopted such statements when they distributed, and/or directed and oversaw the distribution of, the misleading [Memorandum] to investors." Complaint ¶ 135. Plaintiffs further assert that "Defendants knew and/or had reasonable grounds to know of such misrepresentations and omissions in such offering documents," *id.* ¶ 139, and that "[t]he price of the securities purchased by Plaintiff[s] . . . were affected by Defendants' violations of [section] 25400 and thus, such violations were the proximate cause of the losses suffered by Plaintiff[s]." *Id.* ¶ 141.

## 1. *Parties' arguments*

In addition to the Defendants' bespeaks caution doctrine argument and their argument that Defendants are not the makers of any alleged misrepresentations in the Memorandum, Defendants contend that the court should dismiss Plaintiffs' claim in Count II of the Complaint because Plaintiffs' allegations in Count II "rest[] on alleged omissions . . . [and] a person is not liable for an omission unless there is a duty to disclose." Brief in Support of the Motion at 18 (emphasis omitted). Defendants opine that, although "[a] duty to disclose may arise as a result of prior statements—i.e., as necessary to ensure that prior statements are 'not misleading,'" *id.*, such is not the case here because "Defendants were not the makers of any representations, truthful or otherwise. No duty to speak arose out of anything [Berthel Fisher] said to [Plaintiffs] because [Berthel Fisher] did not say anything to [Plaintiffs]," *id.* at 19. In addition, Defendants state that a duty to disclose may arise where there is a particular relationship between the parties, but "there is no 'special relationship' between [Berthel Fisher] and [Plaintiffs] giving rise to an independent duty to speak." *Id.* Finally, Defendants contend that Plaintiffs failed to plead sufficient facts to allege that Berthel Fisher's oversight role with respect to the offering or its role as an underwriter created a duty to disclose. *See id.* (citing Fed. R. Civ. P. 9(b)).

In the Resistance, Plaintiffs contend that Defendants owed Plaintiffs a duty to disclose and to exercise due diligence because "Berthel Fisher acted as an underwriter of the TNP 2008 [Participating Notes Program] . . . [and] certain duties flow from underwriting a securities offering such as [the] TNP 2008 [Participating Notes Program] and the breach of such duties give[s] rise to primary liability for the underwriter." Resistance at 11-12. Pursuant to its status as an "underwriter," Plaintiffs argue that Berthel Fisher owed a duty to conduct due diligence and a "duty to disclose material information to" Plaintiffs. *Id.* at 13. Plaintiffs contend that Berthel Fisher was an underwriter with respect to the TNP 2008 Participating Notes Program offering because the Memorandum states that "the Notes will be offered and sold on a 'best efforts' basis by broker-dealers, or the Selling Group . . . Berthel Fisher . . . will act as managing broker-dealer." Memorandum at 5. Plaintiffs further contend that

> Berthel Fisher's actual role makes it clear that it acted as a "best efforts" underwriter: it undertook to offer and sell the TNP 2008 [Participating Notes Program] securities on a best efforts basis; it was paid a managing broker-dealer fee, a marketing allowance, due diligence fees, and organizational and offering expenses; and it recruited, organized, [and] managed a selling group of broker-dealers and helped it promote the [TNP 2008 Participating Notes Program] to the investing public, and negotiated their selling agreements.

Resistance at 13 (footnotes and quotation marks omitted) (quoting Memorandum at 5, 22, 25, 32, 34 and 92).

In the Reply, Defendants contend that Berthel Fisher was not an underwriter because there was no public offering in the instant case. Defendants opine that the authorities that Plaintiffs rely on in the Resistance are inapplicable to the instant case, which involves a private offering of securities. Alternatively, Defendants argue that, even if Berthel Fisher were an underwriter for the TNP 2008 Participating Notes Program, "there is 'no statutory requirement that an underwriter conduct a due diligence

investigation into a proposed public or private offering.'" Reply at 3 (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d at 572).

In addition, Plaintiffs contend that Berthel Fisher owed Plaintiffs "a duty to . . . deal fairly, reasonably, and with integrity under the 'shingle theory.'" Resistance at 15. In the Reply, Defendants contend that the shingle theory is not applicable to this case because Plaintiffs were not Berthel Fisher's customers and Berthel Fisher did not recommend investing in the TNP 2008 Participating Notes Program to Plaintiffs.

## 2. Analysis

Section 25400 makes it unlawful for "a broker-dealer . . . *to make*, for the purpose of inducing the purchase or sale of such security by others, any statement which was . . . false or misleading with respect to any material fact." Cal. Corp. Code § 25400(d) (emphasis added). As more fully discussed above, pursuant to the Supreme Court's analysis in *Janus*, Defendants did not *make* the alleged misleading statements in the Memorandum because TNP and the TNP 2008 Participating Notes Program had the final authority over the content in the Memorandum, not Defendants. *See Janus*, 131 S. Ct. at 2303 ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."). Based on a plain reading of section 25400(d), it follows that Berthel Fisher cannot be liable under this provision because it did not make the allegedly misleading statements. Accordingly, the Motion is granted to the extent that it requests that the court dismiss Plaintiffs' claim in Count II of the Complaint.

## F. Count VII

In Count VII of the Complaint, Plaintiffs claim that Defendants violated Iowa Code section 502.501, which states:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly . . . [t]o make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading . . . ."

Iowa Code § 502.501.[19]  Plaintiffs contend that Defendants violated this provision "[b]ecause of their role in preparing the [Memorandum], their position of underwriter and [m]anaging [b]roker-[d]ealer of the TNP 2008 [Participating Notes Program], and their role in promoting certain other TNP-sponsored programs, Defendants knew and/or had reasonable grounds to know of such misrepresentations and omissions" in the Memorandum.  Complaint ¶ 181.

Alternatively, and "[t]o the extent that Defendants are deemed not to be sellers of the TNP 2008 [Participating Notes Program] notes," *id.* ¶ 182, Plaintiffs assert that Defendants violated Iowa Code section 502.509(7)(d),[20] which imposes liability, jointly and severally, upon certain broker dealers, among others, and sellers of a security who sell in violation of section 502.301[21] or

> by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading, the purchaser not knowing the untruth of omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of

---

[19] Iowa law defines a security, in part, as a "note [or] stock."  Iowa Code § 502.102(28).  The parties do not dispute that the TNP 2008 Participating Notes Program notes qualify as securities.

[20] The court notes that in the Complaint, Plaintiffs cite Iowa Code section 501.509, a provision that does not exist in the Iowa Code.  In the Reply, Defendants contend that, in light of this typographical error, Plaintiffs have failed to state a claim.  *See* Reply at 7.  The court finds that, in light of the context, it is clear that Plaintiffs intended to cite Iowa Code section 502.509, rather than 501.509, and will consider Plaintiffs' claim pursuant to the appropriate section.

[21] Section 502.301 makes it unlawful to sell a security in Iowa unless the security is registered, exempted from registration or a covered federal security.  This provision is not relevant to the instant matter.

reasonable care, could not have known the untruth or omission.

Iowa Code § 502.509(2). "A person that is a broker-dealer[22] . . . that materially aids in the conduct giving rise to the liability under" section 502.509(2) is liable "unless the person sustains the burden of proof that the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist." *Id.* § 502.509(7)(d). Similarly, section 502.509(7)(a) imposes joint and several liability on "[a] person that directly or indirectly controls a person liable under" section 502.509(2) and section 502.509(7)(b) imposes joint and several liability on "[a]n individual who is a managing partner, executive officer, or director of a person liable under" section 502.509(2). Plaintiffs claim that Defendants violated section 502.509(7) because they "materially aided in the violation of [section] 50[2].509 by TNP and the TNP 2008 [Participating Notes Program], and knew or should have known of such violations." Complaint ¶ 182.

### 1. *Iowa Code section 502.501*

Iowa Code section 502.501 makes it unlawful "[t]o *make* an untrue statement of material fact." Iowa Code § 502.501 (emphasis added). As discussed above, in light of the Supreme Court's analysis in *Janus*, Defendants did not *make* the alleged misleading statements in the Memorandum because TNP and the TNP 2008 Participating Notes Program had the final authority over the content in the Memorandum, not Defendants. *See Janus*, 131 S. Ct. at 2303 ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."). In addition, as the court found with respect to Plaintiffs' claim in Count I, it appears that Plaintiffs have

---

[22] Section 502.102(4) defines "Broker-dealer" as "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account. The term does not include . . . [a]n agent . . . [or] [a]n issuer." Iowa Code § 502.102(4).

elected to forego their argument that Defendants are "sellers" of the TNP 2008 Participating Notes Program notes under the securities laws and, instead, pursue this claim under their alternative argument. Accordingly, the Motion is granted to the extent that it requests that the court dismiss Plaintiffs' claim in Count VII pursuant to section 502.501. However, this does not end the inquiry into Count VII and the court will next discuss Plaintiffs' alternative argument in Count VII—that Defendants violated section 502.509.

### 2. *Iowa Code section 502.509*

#### a. *Parties' arguments*

In the Motion and Reply, Defendants argue that the court should dismiss Plaintiffs' claim pursuant to section 502.509 in Count VII for the following reasons: (1) pursuant to the bespeaks caution doctrine, which the court has already found does not foreclose Plaintiffs' securities-law claims; (2) because Defendants did not "make" any alleged misrepresentations, however, section 502.509 imposes liability on one who "materially aids" one who made the misrepresentation and, thus, a showing that Defendants made the alleged misrepresentations is not necessary; (3) because Defendants had no duty to disclose, however, Plaintiffs do not have to establish that Defendants had a duty to disclose with respect to a claim alleging that Defendants *materially aided* in a violation of the securities laws; (4) because Defendants did not materially aid TNP or the TNP 2008 Participating Notes Program in a violation of section 502.509(2); and (5) because Plaintiffs have not alleged that the TNP 2008 Participating Notes Program notes were offered for sale or purchased in Iowa. The court will discuss (4)[23] and (5), as it has addressed Defendants' assertions (1) through (3) above.

---

[23] The court notes that it already determined that Plaintiffs provided sufficient facts to allege that Defendants materially aided TNP and/or the TNP 2008 Participating Notes Program in a primary violation under California law. Although the analysis is similar under Iowa law, the court will analyze and apply Iowa law with respect to Count VII.

### b.    *Analysis*

The court's analysis of a claim under Iowa Code section 502.509(7) is comparable to that under California Corporations Code section 25504.    To allege liability upon Defendants for "materially aid[ing]" TNP and/or the TNP 2008 Participating Notes Program in their primary violation of section 502.509(2), Plaintiffs must first have alleged a primary violation of section 502.509(2) by TNP or the TNP 2008 Participating Notes Program.   Section 502.509(2) states that

> [a] person is liable to the purchaser if the person sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

Iowa Code § 502.509(2).

The court finds that Plaintiffs' allegations in the Complaint: (1) of the existence of material misrepresentations and omissions in the Memorandum, which was used to promote the TNP 2008 Participating Notes Program and for which TNP and the TNP 2008 Participating Notes Program is responsible; (2) that the TNP 2008 Participating Notes Program commingled investors' funds; and (3) that the TNP 2008 Participating Notes Program operated in a Ponzi-scheme-like fashion, are sufficient to allege primary liability against TNP and/or the TNP 2008 Participating Notes Program in violation of section 502.509(2).

Next, to allege a violation of section 502.509(7), Plaintiffs must allege that Defendants *materially aided* in the conduct giving rise to TNP and/or the TNP 2008 Participating Notes Program's primary violation.    Plaintiffs must also allege that Defendants had or should have had knowledge of the violation. *See Pender State Bank v.*

52

*Remington*, 777 N.W.2d 128 (Table), No. 08-1799, 2009 WL 3775094, at *5 (Iowa Ct. App. 2009) (discussing the additional knowledge requirement under section 502.509(7) and stating that "'a person who merely aids and abets the violation has no liability if he or she can prove a reasonable lack of knowledge of such facts'") (quoting *State ex rel. Miller*, 677 N.W.2d at 769). The court finds that Plaintiffs have sufficiently alleged Defendants' knowledge "in light of [Defendants'] role in promoting certain other TNP-sponsored programs." Complaint ¶ 181 ("Because of their role in preparing the [Memorandum], their position of underwriter and [m]anaging [b]roker-[d]ealer of the TNP 2008 [Participating Notes Program], and their role in promoting certain other TNP-sponsored programs, Defendants knew and/or had reasonable grounds to know of such misrepresentations and omissions in [the Memorandum].").

Plaintiffs contend that they sufficiently alleged that Defendants materially aided in the violation because they alleged that Defendants promoted the TNP 2008 Participating Notes Program and solicited investors as the managing broker-dealer of the TNP 2008 Participating Notes Program, "contributed to the Memorandum, organized the selling group of broker-dealers for the offering, oversaw the offering, compensated other broker-dealers for recruiting investors to [the] TNP 2008 [Participating Notes Program], conducted due diligence as to [the] TNP 2008 [Participating Notes Program], and exercised control over the bank account from which the investor funds were transferred" to the TNP 2008 Participating Notes Program. Resistance at 8. In addition, Plaintiffs argue that the Complaint sufficiently alleges that Defendants knew or should have known of the alleged misrepresentations and omissions in the Memorandum "because of their role in preparing the [Memorandum], their positions as underwriter of the [TNP 2008 Participating Notes Program], and their role in promoting other TNP-sponsored programs." *Id.* at 8-9.

Plaintiffs rely on the Iowa Supreme Court's analysis in *State ex rel. Goettsch*, 561

N.W.2d 369, to support their argument that Defendants materially aided TNP and/or the TNP 2008 Participating Notes Program in the violation. In *State ex rel. Goettsch*, the state brought a case alleging securities fraud pursuant to Iowa Code chapter 502 on behalf of investors. *Id.* at 370. The Iowa Supreme Court found that the district court erred in dismissing the plaintiffs' claim asserting secondary liability for securities fraud against a defendant who allegedly aided and abetted in the primary violation.[24] *Id.* at 384. The Iowa Supreme Court held that the language in section 502.503 "is broad enough to include persons who are not affiliates of primary violators nor partners" and that it "imposes secondary liability on *any* person who 'materially aid[s] and abet[s] in the act or transaction constituting' the securities fraud." *Id.* at 374 (alterations in original) (quoting § 502.503). The Iowa Supreme Court held that, to establish secondary liability, the plaintiff must show "that the alleged aider and abettor . . . provided substantial assistance in the achievement of the primary violation." *Id.* at 382. The Iowa Supreme Court further stated that "substantial assistance requires a showing (1) of a 'substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff' or (2) that 'the encouragement or assistance is a substantial factor in causing the resulting tort.'" *Id.* (quoting *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir. 1985)). In addition, the Iowa Supreme Court stated that "substantial assistance can take the form of positive deeds of manipulation or deception or it can take the form of inaction" where the alleged

---

[24] The statutes at issue in *State ex rel. Goettsch* were section 502.401, which is similar to current section 502.501, and section 502.503 (imposing liability on "persons . . . who materially aid and abet in the act or transaction constituting the violation [of section 502.501, 502.502 or 502.401] and broker-dealers or agents who materially aid and abet in the act or transaction constituting the violation"), which is similar to current section 502.509. The language of the statute has changed so that, where it imposed secondary liability on one who "materially aid[s] and abet[s] in the act or transaction constituting the violation," *State ex rel. Goettsch*, 561 N.W.2d at 374, it now imposes secondary liability on one who "materially aids in the conduct giving rise to the liability," Iowa Code § 502.509(d).

aider and abettor owes the plaintiff an independent duty to disclose. *Id.* The Court went on to hold that the alleged aider-and-abettor defendant provided substantial assistance to the defendant-issuer of promissory notes in the perpetration of a "fraudulent Ponzi scheme," *id.* at 382, when the aider and abettor covered bad checks and provided checking accounts, loans, free accounting services, fax machine services, secretarial support and business phones. *Id.* at 383. Thus, "without [the aider and abettor's] assistance, the Ponzi scheme would have collapsed long before it did." *Id.*

The court finds that Plaintiffs' allegations are sufficient for this claim to go forward. Specifically, Plaintiffs allege that Defendants "knew the [Memorandum][,] whose distribution they planned, oversaw, and executed was materially misleading. They intended that investors rely on that [Memorandum] to invest their money, of which a significant percentage went to Defendants as payment for their key role in the distribution." Sur Reply at 2; *see also* Complaint ¶¶ 64-65 (alleging that Defendants participated in the preparation of the Memorandum, which contained material misrepresentations and omissions); *id.* ¶¶ 83-91 (alleging that Defendants failed to conduct adequate due diligence for the TNP 2008 Participating Notes Program); ¶¶ 92-96 (alleging that Defendants offered and sold securities issued by the TNP 2008 Participating Notes Program to Plaintiffs and oversaw and managed the TNP 2008 Participating Notes Program); Memorandum at 47 (stating that the role of the Broker-Dealer (Berthel Fisher) is to "recommend[] a purchase of the Notes"). Plaintiffs have sufficiently alleged that, "without [Berthel Fisher's] assistance, the [TNP 2008 Participating Notes Program] would have collapsed long before it did." *See State ex rel. Goettsch*, 561 N.W.2d at 382.

The court also finds that Defendants' argument that Plaintiffs' claim pursuant to section 502.509 fails because Plaintiffs have not alleged that the TNP 2008 Participating Notes Program notes were offered for sale or purchased in Iowa is without merit. Iowa Code section 502.610 states that "section 502.509 . . . do[es] not apply to a person that

sells or offers to sell a security unless the offer to sell or the sale is made in [Iowa] or the offer to purchase or the purchase is made and accepted in [Iowa]." Iowa Code § 502.610(1). Similarly, this provision also provides that "section 502.509 . . . do[es] not apply to a person that purchases or offers to purchase a security unless the offer to purchase or the purchase is made in [Iowa] or the offer to sell or the sale is made and accepted in [Iowa]." *Id.* § 502.610(2). This provision clarifies that "an offer to sell or to purchase a security is made in [Iowa], whether or not either party is then present in this state, if . . . the offer originates from within [Iowa]." *Id.* § 502.610(4). An "offer to sell" "includes every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value." *Id.* § 502.102(26).

According to Defendants, section 502.509 does not apply because there is no allegation in the Complaint that the sale or offer took place in Iowa and "Hanson is a Colorado resident who purchased securities from an issuer in California." Reply at 7. However, the Complaint states that "[a]ll of the violations of the Iowa Uniform Securities Act complained of herein took place in Iowa, where Berthel Fisher's headquarters are located . . . because the conduct giving rise to such violations by Defendants took place in, or was directed or overseen from, Berthel Fisher's headquarters." Complaint ¶ 175. The court finds that Plaintiffs' allegations in the Complaint are sufficient for their claim pursuant to section 502.509(7) to go forward in view of the jurisdictional requirements under section 502.610, particularly in light of the broad definition of "offer to sell" under 502.102(26). Plaintiffs have alleged that Berthel Fisher offered the TNP 2008 Participating Notes Program notes for sale and that such offer originated from their Iowa-based headquarters. Therefore, Plaintiffs have pled sufficient allegations to support their claim in Count VII pursuant to section 502.509(7) and the Motion is denied to the extent that it requests that the court dismiss Plaintiffs' claim in Count VII of the Complaint.

## G.  Count VIII

In Count VIII of the Complaint, Plaintiffs claim that Defendants violated Iowa Code section 502.501A, which states:

> A broker-dealer or agent shall not effect a transaction in, or induce or attempt to induce the purchase or sale of, any security in this state by means of any manipulative, deceptive, or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of this chapter.  A broker-dealer or agent shall not recommend to a customer the purchase, sale, or exchange of a security without reasonable grounds to believe that the transaction or recommendation is suitable for the customer based upon reasonable inquiry concerning the customer's investment objectives, financial situation and needs, and other relevant information known by the broker-dealer.

Iowa Code § 502.501A.  Plaintiffs assert that "Defendants violated [section] 502.501A because [they] effected transactions in, and/or induced or attempted to induce the purchase of TNP 2008 [Participating Notes Program] notes by Plaintiff[s] . . . , through material misrepresentations and omissions, in violation of the Iowa Uniform Securities Act." Complaint ¶ 191.

In the Motion, Defendants argue that the court should dismiss Plaintiffs' claim in Count VIII of the Complaint: (1) because Berthel Fisher did not make the alleged misrepresentations, TNP did; (2) because Berthel Fisher did not owe a duty to disclose to Plaintiffs; (3) pursuant to the bespeaks caution doctrine; and (4) because section 502.501A does not apply because Plaintiffs did not allege that the sale, offer or acceptance of the TNP 2008 Participating Notes Program notes took place in Iowa.

The court has discussed each of Defendants arguments above.  Although the court agrees with Defendants' contention that, pursuant to the Supreme Court's analysis in *Janus*, Berthel Fisher did not *make* the alleged misrepresentations in the Memorandum—TNP did—this does not dispose of Plaintiffs' claim pursuant to section

502.501A, which prohibits a broker-dealer from "recommend[ing] to a customer the purchase, sale, or exchange of a security without reasonable grounds to believe that the transaction or recommendation is suitable for the customer based upon reasonable inquiry." Iowa Code § 502.501A. There is no requirement that Berthel Fisher *made* any allegedly misleading statements for this claim to go forward. With respect to Defendants' additional arguments as to this claim, the court has already found that they are without merit. After reviewing the Complaint and the factual allegations therein, the court finds that Plaintiffs have sufficiently alleged a claim pursuant to section 502.501A. Accordingly, the Motion is denied to the extent that it requests that the court dismiss Plaintiffs' claim in Count VIII of the Complaint.

## VII. FRAUD AND AIDING AND ABETTING FRAUD (COUNTS III, VI AND XI)

### A. Count III

In Count III of the Complaint, Plaintiffs contend that Defendants induced a contract by knowing misrepresentations in violation of California Civil Code section 1572 and California common law. Plaintiffs assert that Defendants committed fraud because they made "numerous misrepresentations of material fact" and "[b]ecause of their role in preparing the . . . [Memorandum], their position of underwriter and [m]anaging [b]roker-[d]ealer of the TNP 2008 [Participating Notes Program], and their role in promoting certain other TNP-sponsored programs, Defendants knew and/or had reasonable grounds to know of such misrepresentations and omissions." Complaint ¶¶ 144, 146. According to Plaintiffs, Defendants "made . . . representations with the intent to induce reliance on them" to investors in the TNP 2008 Participating Notes Program, including Plaintiffs, "to cause them to invest in the TNP 2008 [Participating Notes Program]." *Id.* ¶ 147. Plaintiffs further allege that they "justifiably relied on the statements" in the Memorandum, the "very purpose" of which was "to advise Plaintiff[s] . . . of the risks posed by investing in the TNP 2008 [Participating Notes Program] and to inform them of

TNP's background and management ability." *Id.* ¶ 148. Finally, Plaintiffs contend that "Defendants' misrepresentations were the proximate cause of the losses suffered by Plaintiff[s]" because "[i]f the complete facts regarding these topics had been disclosed to investors . . . no reasonable investor would entrust their funds to the TNP for the TNP 2008 [Participating Notes Program]." *Id.* ¶ 149.

Section 1572 states:

> Actual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.

Cal. Civil Code § 1572.

### 1. *Parties' arguments*

Defendants argue that the court should dismiss Plaintiffs' claim in Count III for the following reasons: (1) because Defendants were not the makers of any alleged misrepresentations in the Memorandum; (2) because Defendants did not have a duty to disclose information to Plaintiffs; (3) pursuant to the bespeaks caution doctrine; and (4) because Plaintiffs did not rely on Defendants in deciding whether to invest in the TNP 2008 Participating Notes Program. Defendants contend that Plaintiffs cannot show the

reliance element of a negligent misrepresentation claim because Plaintiffs "understood and agreed that [they] relied on [their] 'own examination of the [TNP 2008 Participating Notes Program] and the terms of the [o]ffering, including the merits and risks involved.'" Reply at 5 (quoting Memorandum at 5).

In the Resistance, Plaintiffs argue that Defendants are liable for fraud by virtue of Berthel Fisher's duty to disclose to Plaintiffs that exists: (1) in light of its role as the underwriter for the TNP 2008 Participating Notes Program offering; (2) pursuant to the shingle theory; (3) by virtue of its agreement to serve as the managing broker-dealer of the TNP 2008 Participating Notes Program offering, to which Plaintiffs were third-party beneficiaries; and (4) because it recruited investors to the TNP 2008 Participating Notes Program while knowing of adverse facts that were not known or reasonably accessible to the investors.

### 2. *Applicable law*

"The elements of . . . actual fraud[] are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Anderson v. Deloitte & Touche*, 66 Cal. Rptr. 2d 512, 515 (Cal. Ct. App. 2007) (quoting *Molko v. Holy Spirit Ass'n for the Unification of World Christianity*, 762 P.2d 46, 53 (Cal. 1988)); *see also Warren v. Merrill*, 49 Cal. Rptr. 3d 122, 132 (Cal. Ct. App. 2006) ("To prove a cause of action for actual fraud requires evidence of (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage (causation)." (quoting *Vega v. Jones Day, Reavis & Pogue*, 17 Cal. Rptr. 3d 26, 32 (Cal. Ct. App. 2004) (internal quotation marks omitted))). "[T]o establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant 'was under a legal duty to disclose them.'" *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 68 Cal. Rptr. 3d 828, 840 (Cal. Ct. App. 2007) (quoting *Lingsch*

*v. Savage*, 29 Cal. Rptr. 201, 204 (Cal. Ct. App. 1963)); *see also Lingsch*, 29 Cal. Rptr. at 206 (The elements of a cause of action for "fraud based on mere nondisclosure and involving no confidential relationship" are: (1) nondisclosure by the defendant; (2) defendant's knowledge of such facts and that such facts are unknown to the plaintiff; (3) defendant's intention to induce action by the plaintiff (4) inducement of the plaintiff to act by reason of the nondisclosure; and (5) resulting damages.).

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*OCM Principal Opportunities Fund*, 68 Cal. Rptr. 3d at 851 (quoting *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997)) (internal quotation marks omitted).

> In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff.

*Warner Constr. Corp. v. City of L.A.*, 466 P.2d 996, 1001 (Cal. 1970) (footnotes omitted).

> Where . . . there is no fiduciary relationship, the duty to disclose generally presupposes a relationship grounded in "some sort of *transaction* between the parties. Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement."

*OCM Principal Opportunities Fund*, 68 Cal. Rptr. 3d at 851 (citations omitted) (quoting

*LiMandri*, 60 Cal. Rptr. 2d at 543).

To establish reliance in a fraudulent omission case, a plaintiff must establish that "'had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.'" *Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 892 (Cal. Ct. App. 2011) (alteration in original) (quoting *Mirkin*, 858 P.2d at 574). With respect to the resulting damages requirement, "a party asserting fraud must establish that its damages are the 'proximate' or 'legal' result of fraudulent conduct." *OCM Principal Opportunities Fund*, 68 Cal. Rptr. 3d at 860 (citing *Goehring v. Chapman Univ.*, 17 Cal. Rptr. 3d 39, 47 (Cal. Ct. App. 2004)). Proximate causation requires "a causal link between the losses and the 'facts misrepresented.'" *Id.* at 862 (quoting Restatement (Second) of Torts § 548A).

### 3.    *Application*

As discussed above, pursuant to the Supreme Court's analysis in *Janus*, Berthel Fisher is not the *maker* of any alleged misrepresentations in the Memorandum. *Janus*, 131 S. Ct. at 2303 ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."). Thus, this cannot form the basis of liability under Plaintiffs' fraud claim. However, as also discussed above, the court finds that Plaintiffs have pled sufficient facts to allege that Berthel Fisher owed Plaintiffs a duty to investigate and disclose, in part, because of its underwriter status. *See Dolphin & Bradbury, Inc.*, 512 F.3d at 641 ("An underwriter must investigate and disclose material facts that are known or 'reasonably ascertainable.'" (quoting *Municipal Sec. Disclosure*, 1988 WL 999989, at *20)); *Municipal Sec. Disclosure*, 1988 WL 999989, at *20 ("[A] broker-dealer recommending securities to investors . . . [must] ha[ve] an adequate basis for the recommendation. . . . [The broker-dealer] must disclose facts which he knows and those which are reasonably ascertainable. By his recommendation he implies that a reasonable investigation has been made and that his recommendation rests on the

conclusions based on such investigation."). Moreover, the court finds that the Complaint sufficiently alleges that Berthel Fisher had knowledge of the omissions, in light of the allegations that Berthel Fisher worked with TNP in programs prior to the TNP 2008 Participating Notes Program, Berthel Fisher intended to induce Plaintiffs to invest in the TNP 2008 Participating Notes Program and Berthel Fisher did in fact induce Plaintiffs to invest in the TNP 2008 Participating Notes Program, to their detriment. In light of the foregoing, the court finds that Plaintiffs have adequately pled that the Defendants committed fraud and the Motion is denied to the extent that it requests that the court dismiss Count III of the Complaint.

### B. Counts VI and XI

In Counts VI and XI of the Complaint, Plaintiffs allege that Defendants aided and abetted fraud pursuant to California and Iowa common law, respectively. Plaintiffs assert that TNP and the TNP 2008 Participating Notes Program committed fraud in light of: (1) the allegedly material misrepresentations and omissions in the Memorandum; (2) the allegation that TNP and the TNP 2008 Participating Notes Program knew of the material misrepresentations and intended that Plaintiffs rely on such misrepresentations; (3) the allegation that Plaintiffs justifiably relied on such representations; and (4) the allegation that Plaintiffs incurred damages as a direct and proximate result. Plaintiffs claim that Defendants aided and abetted this fraud "[b]ecause of their role in preparing the [Memorandum], their position of underwriter and [m]anaging [b]roker-[d]ealer of the TNP 2008 [Participating Notes Program], and their role in promoting certain other TNP-sponsored programs," Defendants had knowledge of TNP and the TNP 2008 Participating Notes Program's fraud. Complaint ¶ 170. Plaintiffs further allege that Defendants provided essential, substantial assistance to such fraud "by playing the leading role in the promotion of the TNP 2008 [Participating Notes Program] to the investing public, as underwriter and [m]anaging [b]roker-[d]ealer of the TNP 2008 [Participating Notes

Program]." *Id.* ¶ 171.

### 1. Parties' arguments

In the Motion, Defendants argue that the court should dismiss Plaintiffs' aiding and abetting claims because Plaintiffs have only alleged that Defendants had constructive knowledge of TNP and the TNP 2008 Participating Notes Program's fraud, and constructive knowledge is not enough to support an aiding and abetting claim. In addition, Defendants argue that Plaintiffs have not offered any "factual detail to support [their] allegations" that Berthel Fisher was involved in the preparation of the Memorandum and that Berthel Fisher had oversight and due diligence responsibilities arising out of its role as the managing broker-dealer and underwriter of the TNP 2008 Participating Notes Program offering. Brief in Support of the Motion at 26.

In the Resistance, Plaintiffs contend that the allegations in the Complaint are sufficient to support their aiding and abetting claims. Specifically, Plaintiffs assert that they "pled actual knowledge in the [Complaint]," not merely constructive knowledge, "which more than satisfies the required pleading standard." Resistance at 11.

### 2. Analysis

Iowa and California have both adopted the common law rule subjecting a defendant to liability for aiding and abetting a tort. This rule states that

> [l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Cal. Ct. App. 2005) (alteration in original) (quoting *Saunders v. Superior Court of L.A. Cnty.*, 33 Cal. Rptr. 2d 438, 446 (Cal. Ct. App. 1994)) (internal quotation marks omitted); *see also Reilly v.*

*Anderson*, 727 N.W.2d 102, 115 (Iowa 2006) (providing that aiding and abetting a tort "simply requires [the defendant] to know [the other's] actions were tortious and that [the defendant] gave substantial assistance" (citing Restatement (Second) of Torts §876 cmt. d)).

The court finds that Plaintiffs have pled sufficient facts to allege aiding and abetting fraud in Counts VI and XI. The Complaint alleges that Berthel Fisher had actual knowledge of TNP and the TNP 2008 Participating Notes Program's fraud, that is, of the material misrepresentations that TNP and the TNP 2008 Participating Notes Program made in the Memorandum. Additionally, the Complaint alleges that Berthel Fisher provided TNP and the TNP 2008 Participating Notes Program substantial assistance in carrying out the fraud because Berthel Fisher allegedly oversaw the offering of the TNP 2008 Participating Notes Program notes, distributed the notes, acted as an underwriter and acted as the managing broker-dealer of the offering. In light of the foregoing, the Motion is denied to the extent that it requests that the court dismiss Plaintiffs' aiding and abetting fraud claims in Counts VI and XI of the Complaint.

## VIII.  NEGLIGENCE AND NEGLIGENT MISREPRESENTATION (COUNTS IV, V, IX AND X)

### A.  Negligent Misrepresentation

Count IV alleges negligent misrepresentation pursuant to California common law and Count IX alleges negligent misrepresentation pursuant to Iowa common law. These claims assert that Defendants are liable because they "made misrepresentations of material facts and omitted to disclose material information . . . in the [Memorandum]." Complaint ¶¶ 154, 199.

The Iowa Supreme Court has stated that it relies on the Restatement (Second) of Torts section 552 to define the tort of negligent misrepresentation. *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001). Section 552 of the Restatement (Second) of Torts provides that:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he has a
> pecuniary interest, supplies false information for the guidance
> of others in their business transactions, is subject to liability
> for pecuniary loss caused to them by their justifiable reliance
> upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).  The person who *supplies* the information to the person must owe that person a duty to be liable for negligent misrepresentation.  *Sain*, 626 N.W.2d at 124.

Similarly, "[t]he elements of a cause of action for negligent misrepresentation" under California law are: (1) "[t]he defendant must have made a representation as to a past or existing material fact"; (2) "[t]he representation must have been untrue"; (3) "the defendant must have made the representation without any reasonable ground for believing it to be true"; (4) "[t]he representation must have been made with the intent to induce plaintiff to rely upon it"; (5) "[t]he plaintiff must have been unaware of the falsity of the representation, he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation"; and (6) "as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage." *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 900 (Cal. Ct. App. 2003) (internal quotation marks omitted) (quoting Cal. Civil Jury Instruction 12.45, Fraud and Deceit—Negligent Misrepresentation).

In the Motion, Defendants argue that the court should dismiss Plaintiffs' claims asserting negligent misrepresentation because any alleged misrepresentations in the Memorandum are attributable to TNP and the TNP 2008 Participating Notes Program, not Defendants.  A claim for negligent misrepresentation requires Defendants to have *made* a misrepresentation.  As more fully discussed above, pursuant to the Supreme Court's analysis in *Janus*, Defendants did not *make* the alleged misrepresentations in the

Memorandum because TNP and the TNP 2008 Participating Notes Program had the final authority over the content in the Memorandum, not Defendants. *See Janus*, 131 S. Ct. at 2303 ("[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."). Accordingly, the court finds that Plaintiffs have not pled a claim asserting negligent misrepresentation and the Motion is granted to the extent that it requests the court to dismiss Plaintiffs' negligent misrepresentation claims in Counts IV and IX of the Complaint.

### B. Negligence

Count V alleges negligence pursuant to California common law and Count X alleges negligence pursuant to Iowa common law. These claims assert that Defendants owed Plaintiffs "a duty to conduct adequate due diligence as to the TNP 2008 [Participating Notes Program]," Complaint ¶¶ 162, 208, and "to act as a reasonable broker-dealer . . . under the same or similar circumstances," *id.* ¶¶ 164, 21. Plaintiffs further assert that Defendants were negligent because they breached that duty by "failing to perform adequate due diligence" as to the TNP 2008 Participating Notes Program before underwriting the TNP 2008 Participating Notes Program offering and overseeing the distribution of the Memorandum, and by "failing to warn Plaintiff[s] . . . that Defendants did not have a reasonable basis to offer and promote and had not adequately vetted the TNP 2008 [Participating Notes Program] notes." *Id.* ¶¶ 165, 211. According to Plaintiffs, they relied on the Memorandum in deciding to invest in the TNP 2008 Participating Notes Program and suffered damages as a direct result of Defendants' negligence.

In the Motion, Defendants argue that the court should dismiss Plaintiffs' negligence claims because Defendants owed no legal duty to Plaintiffs, an argument that the court has fully addressed and rejected above. The court reiterates its finding that Plaintiffs have put forth sufficient facts in the Complaint to allege that Berthel Fisher acted as an underwriter for the TNP 2008 Participating Notes Program and owed Plaintiffs a duty to disclose, a

duty to investigate and/or a duty to conduct due diligence as to TNP and/ or the TNP 2008 Participating Notes Program.

To prevail on a negligence claim under Iowa law, a "plaintiff must establish that the defendant owed the plaintiff a duty of care, the defendant breached that duty, the breach was the actual and proximate cause of the plaintiff's injuries, and the plaintiff suffered damages." *Novak Heating & Air Conditioning v. Carrier Corp.*, 622 N.W.2d 495, 497 (Iowa 2001). Similarly, under California law, "'[a]n action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff.'" *Mintz v. Blue Cross of Calif.*, 92 Cal. Rptr. 3d 422, 434 (Cal. Ct. App. 2009) (quoting *Ann M. v. Pac. Plaza Shopping Ctr.*, 863 P.2d 207, 211 (Cal. 1993)). The court finds that Plaintiffs have alleged sufficient facts to support a finding that Berthel Fisher was negligent and that its negligence caused Plaintiffs' injuries, namely, the loss of their investment with the TNP 2008 Participating Notes Program. Accordingly, the Motion is denied to the extent that it requests that the court dismiss Plaintiffs' negligence claims in Counts V and X of the Complaint.

## IX. CONTROL PERSON LIABILITY

In the Complaint, Plaintiffs assert each claim against both Thomas Joseph Berthel and Berthel Fisher. Thomas Joseph Berthel was Berthel Fisher's Chief Executive Officer, Chairman of the Board, and one of its indirect owners at all relevant times. Complaint ¶ 22. Plaintiffs assert that "[b]ecause of his position of control and authority . . . [Thomas Joseph Berthel] was able to and did control Berthel Fisher's activities, including its preparation and dissemination of misleading offering documents for TNP offerings including the TNP 2008 [Participating Notes Program] and its management and oversight of the TNP 2008 [Participating Notes Program] Offering." *Id.* ¶ 23; *see also id.* ¶¶ 91, 96.

## A. Parties' Arguments

In the Motion, Defendants contend that the court should dismiss each of Plaintiffs' claims against Thomas Joseph Berthel for the following reasons: (1) because Plaintiffs did not plead a viable claim asserting a securities law violation, and a "claim for 'control person' liability first requires a primary violation by the principal wrongdoer"; (2) because "control person liability" is only statutorily imposed and, thus, is not available as to Plaintiffs' claims asserting common law violations; and (3) because Thomas Joseph Berthel did not participate in the alleged activities that constitute securities law violations. Brief in Support of the Motion at 24.

In the Resistance, Plaintiffs contend that they have adequately stated their claims asserting control person liability against Thomas Joseph Berthel "under both California and Iowa Blue Sky Laws, not under common law as Defendants assert." Resistance at 22 (footnote omitted). Plaintiffs further argue that only notice pleading is required to assert a claim for control person liability.

## B. Applicable law

Pursuant to California Corporations Code section 25504, a control person may be liable where a plaintiff has shown an underlying violation of the California securities laws. Specifically, section 25504 provides:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503 . . . [is] also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code § 25504.

Similarly, Iowa Code section 502A.7 provides:

> A person who directly or indirectly controls another person liable under this chapter, a partner, officer, or director of the other person, a person occupying a similar status or

performing similar functions, and an employee of such other person who materially aids in the violation, is liable jointly and severally with and to the same extent as the other person, unless the person who is liable by virtue of this provision sustains the burden of proof and the person did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Iowa Code § 502A.7(2).

To assert control person liability, a plaintiff must first establish an underlying violation of the securities laws. *See In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 961 (8th Cir. 2008) (affirming the district court's dismissal of the plaintiff's control person claims pursuant to the federal securities laws because a control person claim is a derivative claim that requires an underlying violation of the 1934 Securities Exchange Act, and the plaintiffs had not made a submissible claim as to the underlying violation); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) (holding that a plaintiff could not assert control person liability pursuant to section 25504 where the plaintiffs failed to state "a viable claim for primary liability" against the defendants).

## C.  Application

At the outset, the court notes that it appears that, despite Plaintiffs' use of "Defendants" throughout the Complaint, Plaintiffs are only asserting that Thomas Joseph Berthel is liable under the securities law claims asserted in Counts I, II, VII and VIII. Furthermore, control person liability is statutorily imposed and does not exist at common law, and Plaintiffs provide the court with no basis for imposing control person liability on Thomas Joseph Berthel in their claims pursuant to the common law in Counts III,[25] IV, V,

---

[25] The court notes that Plaintiffs' claim in Count III is pursuant to California Corporations Code section 1572 as well as the common law.  However, Plaintiffs do not provide the court with an accompanying statute imposing control person liability with

(continued...)

VI, IX, X and XI.  Moreover, the court already dismissed Plaintiffs' claim in Count II, so there can be no control person liability as to that claim.  Accordingly, Thomas Joseph Berthel could only be liable as a control person with respect to Plaintiffs' claims in Counts I, VII and VIII.

As to Count I, the court finds that Thomas Joseph Berthel is not liable as a control person because Plaintiffs have not adequately pled that Berthel Fisher is liable for a primary violation under sections 25501 or 25503.  *See* Cal. Corp. Code § 25504.  Rather, as the court found above, Plaintiffs' claim in Count I may proceed pursuant to section 25504 as a "broker-dealer or agent who materially aids in [TNP and/or the TNP 2008 Participating Notes Program's] act or transaction constituting the [primary] violation." *See id.*  Because Plaintiffs failed to pursue their claim against Berthel Fisher pursuant to section 25401, electing instead to pursue their claim in Count I pursuant to section 25504, they did not plead a primary violation against Berthel Fisher pursuant to California securities law.  Accordingly, the court finds that Thomas Berthel Fisher is not liable as a control person in Count I.

As to Counts VII and VIII, Plaintiffs adequately pled violations of the Iowa securities laws against Berthel Fisher.  Furthermore, they adequately pled that Thomas Joseph Berthel "directly or indirectly controls another person liable under [Chapter 502A]." Iowa Code § 502A.7(2).  However, the primary violations that Plaintiffs pled are pursuant to Chapter 502, entitled the "Uniform Securities Act (Blue Sky Law)," not Chapter 502A, entitled the "Commodities Code."  Plaintiffs have not provided the court with an alternative statute imposing control person liability on Thomas Joseph Berthel under Iowa law, and the court is aware of none.  Accordingly, based on a plain reading of the statute providing for control person liability under Iowa law, section 502A.7, the

---

[25](…continued)
respect to section 1572, so this does not affect the court's analysis.

court finds that Plaintiffs have failed to assert control person liability against Thomas Joseph Berthel in Counts VII and VIII. In light of the foregoing, Plaintiffs have failed to state a claim against Thomas Joseph Berthel and the Motion is granted to the extent that it requests that the court dismiss Plaintiffs' claims against Thomas Joseph Berthel.

## X. CONCLUSION

In light of the foregoing, Defendants Berthel Fisher and Company Financial Services, Inc. and Thomas Joseph Berthel's Motion to Dismiss (docket no. 22) is **GRANTED IN PART AND DENIED IN PART**. With respect to Plaintiffs' claims against Thomas Joseph Berthel, the Motion is **GRANTED** and Counts I through XI are **DISMISSED** against Thomas Joseph Berthel. The Clerk of Court is **DIRECTED** to **DISMISS** Thomas Joseph Berthel from this case. With respect to Counts II, IV and IX, the Motion is **GRANTED** and Counts II, IV and IX are **DISMISSED**. With respect to Counts I, III, V, VI, VII, VIII, X and XI, the Motion is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 29th day of May, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA